PERINI CORPORATION *vs.* BUILDING INSPECTOR OF NORTH
ANDOVER.

Middlesex. January 16, 1979. — February 22, 1979.

Present: HALE, C.J., GOODMAN, & DREBEN, JJ.

*Greater Lawrence Sanitary District. Municipal Corporations*, Sanitary
district, Ordinances and by-laws. *Practice, Civil*, Declaratory pro-
ceeding. *Words*, "Municipal."

Buildings and other structures of the Greater Lawrence Sanitary Dis-
trict were "municipally-owned" within the meaning of North An-
dover's building by-law and thus no building permit fee was re-
quired in connection with the construction of a water treatment
facility for the district. [74-76]
In an action seeking a declaratory judgment that the plaintiff contrac-
tor was not required to obtain a municipal building permit from the
town of North Andover in connection with its construction of a
water treatment facility for the Greater Lawrence Sanitary Dis-
trict, there were insufficient facts in the record to support either
the judge's determination that a permit was not required because
of the exemption for structures owned by the Commonwealth in
G. L. c. 143, § 3, and the municipal by-law or the plaintiff's alterna-
tive argument that the by-law should not apply to the project be-
cause of State and Federal funding grants imposing extensive re-
quirements on the contractor. [76-79]

CIVIL ACTION commenced in the Superior Court on
March 26, 1975.

The case was heard by *John P. Sullivan*, J.

The case was submitted on briefs.

*Arnold H. Salisbury*, Town Counsel, & *Donald F. Smith*
for the defendant.

*John D. O'Reilly, III*, for the plaintiff.

DREBEN, J. In this action for declaratory relief a Superi-
or Court judge determined that the plaintiff, Perini Cor-
poration, was not required to apply for a municipal build-

ing permit from the town of North Andover or to pay a permit fee in connection with its construction of a water treatment facility for the Greater Lawrence Sanitary District. Judgment was entered for the plaintiff after its motion for summary judgment was allowed. The building inspector of the town has appealed. We agree with the decision that the plaintiff is exempt from paying the permit fee and will discuss that issue first.

The facts are uncontroverted. The Greater Lawrence Sanitary District was created as "a body politic and corporate" by St. 1968, c. 750 (as amended by St. 1970, c. 320), to develop water pollution abatement facilities for the district, which includes the territories of the city of Lawrence and the towns of Andover, Methuen and North Andover. After acquiring title to ninety acres of land in North Andover in 1970, the district in January, 1974, entered into a contract with the plaintiff for construction of subterranean and aboveground structures. The contract provided that the plaintiff would procure and pay for all necessary permits.

The plaintiff began construction in March, 1974, without applying for a building permit from the town. The building inspector and, after a hearing in November, 1974, the board of appeals determined that a building permit and a fee were required. On January 28, 1975, the plaintiff applied for a permit without tendering a fee and, on February 14, 1975, the application was refused because of the plaintiff's "failure to conform to certain provisions of the State Building Code, especially Sections 113.2 and 118," which relate to fees.[1] The prescribed fee, if one is required, is $15,000.

---

[1] Article 1, § 113.2, of the State Building Code, 3 Code Mass. Regs. Part 4 (1975) provides: "The application for a permit shall be submitted in such form as the building official may prescribe and shall be accompanied by the required fee as prescribed in section 118.0."

Article 1, § 118.0, of the code provides: "No permit shall be issued to begin work for new construction, alteration, removal, demolition or other building operation until the fees prescribed by municipal ordinance or by-law shall have been paid to the city or town collector or other municipal agency authorized to collect such fees."

On March 11, 1975, the defendant issued a stop work order. The plaintiff filed this complaint on March 26, 1975, the Superior Court issued a temporary injunction enjoining the defendant from enforcing the order pending the resolution of the case, and construction continued.

In order to determine whether a permit fee is required we have to examine § 22 of the North Andover building by-law which provides an exemption for "municipally-owned buildings or structures."[2] For this purpose we do not find it necessary to decide whether the State Building Code is applicable to the project, because, even under that code, the permit fee, if required, is prescribed by the local by-law. Section 118.0 of the State Building Code, cited in footnote 1, *supra*.[3] The question then is whether the buildings and other structures of the Greater Lawrence Sanitary District are "municipally-owned" within the meaning of the by-law. We hold that they are.

While cities and towns usually provide local services, some problems are more effectively solved by governmen-

---

[2] Section 22 of that by-law, adopted in 1970, reads as follows: "Section 22. Permit fees:

Based upon estimated costs of construction, the permit fees shall be as follows:

$3.00 per thousand on estimated costs of construction with a minimum fee of $6.00 per permit.

Building permit fees shall not be required for municipally-owned buildings or structures.

Estimated costs shall be based on $15.00 per square foot."

[3] The plaintiff claims that the State Building Code is not applicable to the project since that code became effective on January 1, 1975, after construction had begun. On appeal, the defendant does not take a definitive position as to whether the municipal code or the State Building Code is applicable. Prior to the appeal he seemed to assert only that the State code was applicable. He did not attempt to enforce the municipal building code, and the defendant's answer requested the court to determine that an application for a building permit "must be . . . made to him, all in accordance with the governing provisions of the *State Building Code*" (emphasis supplied). We note also that the plaintiff's application was refused because of its failure to conform to the (fee) provisions of the State Building Code.

tal units having different boundary lines. Districts are created when units of special size and location are deemed particularly appropriate to provide certain facilities. The Greater Lawrence Sanitary District is the unit created to solve water pollution problems for the three towns and one city in its area. It is given the necessary powers to carry out that function, and the costs of its water pollution abatement services, other than the costs paid by State and Federal grants, are charged to its member towns and city. St. 1968, c. 750, § 5, as appearing in St. 1970, c. 320, § 4.

Districts which are created to provide more efficiently the same services usually furnished by cities or towns provide, in our view, municipal services. This is equally true whether a district is composed of more than one city or town or is located entirely within the boundaries of a single city or town. As stated in *Gaskill* v. *Dudley*, 6 Met. 546, 553 (1843), "School districts, so far as they are corporations, are corporations of the same kind as towns, organized for the same purposes, charged with the same duties . . . ."

"Municipal" has been construed in Massachusetts to apply primarily to local matters, most usually to cities and towns, as in *Ouellet* v. *Board of Appeals of Dover*, 355 Mass. 77, 78-79 (1968). The defendant, relying on that case, would have us limit the term "municipally-owned" to buildings and structures owned by a city or town. However, we believe it more appropriate, and also more consistent with judicial and statutory authority,[4] to construe the term to include buildings and structures owned by the Greater Lawrence Sanitary District.

---

[4] Such use of the term "municipal" is also consistent with the definitions of dictionaries and text writers. E.g., Black's Law Dictionary 1168 (4th ed. 1951): "In narrower sense, it means pertaining to a local governmental unit, commonly, a city or town or other governmental unit." See also 1 McQuillin, Municipal Corporations § 2.19 (3d ed. 1971).

Districts, whether consisting of a portion of a town or composed of one or more towns, are sometimes referred to as "quasi corporation[s] performing municipal functions," *Hurlburt* v. *Great Barrington*, 300 Mass. 524, 526 (1938), "quasi municipal corporation[s]," *Williams College* v. *Williamstown*, 219 Mass. 46, 47 (1914), or "municipal quasi corporations," *Seaver* v. *Onset Fire District*, 282 Mass. 209, 213 (1933). 1 McQuillin, Municipal Corporations § 2.13 (3d ed. 1971). Numerous statutes also define the term "municipal," or a derivative thereof, to include districts, e.g., G. L. c. 44, § 16 (indebtedness of district called "Municipal Purpose Loan"); G. L. c. 44, § 16B ("district" referred to as "municipality" in connection with seals and municipal indebtedness); G. L. c. 149, § 178G, as in effect prior to St. 1973, c. 1978, § 1, ("municipal employer" included any county, city, town, or district); G. L. c. 40D, § 1(*n*) (defines "municipality" to include, where the context requires, two or more cities or towns joining together to form an authority to carry out industrial development). See also G. L. c. 41, § 99J (General Laws applicable to town police departments shall apply to district police departments). Based on these authorities and the nature of the services provided, we hold the subterranean and aboveground structures of the Greater Lawrence Sanitary District are "municipally-owned" within the meaning of the North Andover by-law.[5] The judge was, therefore, correct in determining that no fee was required.

We now turn to the other issue in this case, namely, whether a permit is required. Although both parties have requested a determination of this question, it is not clear that an actual controversy exists. The plaintiff did, in fact, file an application for a building permit, and the

[5] The fact that there are some contexts in which the term is limited to cities and towns does not, of course, derogate from our conclusion. E.g., G. L. c. 41, § 81L (municipal service means public utilities furnished by the city or town in which a subdivision is located).

primary reason the permit was refused was the plaintiff's failure to conform to the fee requirements of the State Building Code. Now that we have determined that a fee is not required, the defendant may issue the permit or may, as the record shows other municipalities have done, decide that a permit is not necessary. Moreover, as noted in footnote 3, *supra*, the defendant has sought only to enforce the State Building Code, and there may be no controversy as to the need for a permit under the municipal building code.

Furthermore, the record does not contain sufficient facts for a determination whether a building permit is required. The judge below, citing *Village on the Hill, Inc.* v. *Massachusetts Turnpike Authy.*, 348 Mass. 107 (1964), cert. denied, 380 U.S. 955 (1965), held in his memorandum of decision that a permit was not required because of the statutory exemption contained in G. L. c. 143, § 3,[6] and the exemption in § 5 of the municipal by-law[7] for structures owned by the Commonwealth. However, as a matter of strict construction, neither the by-law nor the statutory provision exempts the structures of the district.

---

[6] General Laws c. 143, §§ 3 & 3A, were rewritten, effective January 1, 1975, so as to eliminate the exemption for buildings owned by the Commonwealth. Chapter 143, § 3, as in effect prior to January 1, 1975, read in part as follows: "Every city . . . and every town, for the prevention of fire and the preservation of life, health and morals, by ordinances or by-laws consistent with law . . . may regulate the . . . construction . . . and may require permits . . . therefor, of buildings and other structures . . . except such buildings and other structures as are owned or occupied . . . by the commonwealth . . . ."

[7] The structures exempted from the provisions of the by-law are: "(a) Buildings belonging to the United States of America or to the Commonwealth of Massachusetts.
(b) Bridges, quays, and wharves.
(c) Buildings not more than eight feet in length or breadth or seven feet in height measured to the extremities.
(d) Temporary structures erected for storage or offices during construction operations, providing such structures shall be removed at completion of operations.
(e) Ordinary repairs."

The buildings owned by the Greater Lawrence Sanitary District are clearly not owned by the Commonwealth and there is no evidence that they should be exempt from building code requirements for analogous policy considerations. There is nothing in the record which describes the "State like" or "government" functions,[8] if any, of the district or suggests that the municipal by-law impedes the construction of the district's facilities.[9] Compare *Medford* v. *Marinucci Bros. & Co.*, 344 Mass. 50, 58 (1962), and *Commonwealth* v. *Biddiscombe*, 347 Mass. 427, 429 (1964).

There are also insufficient facts in the record to support the plaintiff's alternative argument, based on *Boston Edison Co.* v. *Sudbury*, 356 Mass. 406, 420 (1969), that the municipal code should not apply to this project since State and Federal funding grants impose extensive requirements on the contractor. The record does not set forth the nature of the subterranean and aboveground facilities, does not contain evidence of any considerations requiring uniformity,[10] contrast *Boston Edison Co.* v. *Sud-*

---

[8] Cf. *Village on the Hill, Inc.* v. *Mass. Turnpike Authy.* 348 Mass. 107, 118 (1964).

[9] We are limited to the portions of the by-law contained in the record and cannot take judicial notice of the remaining provisions. *Boyle* v. *Building Inspector of Malden*, 327 Mass. 564, 566 (1951). *Old Colony Trust Co.* v. *Merchant Enterprises, Inc.*, 332 Mass. 484, 488 (1955). *Nigro* v. *Jones*, 332 Mass. 741, 743 (1955). *Building Inspector of Wayland* v. *Ellen M. Gifford Sheltering Home Corp.*, 344 Mass. 281, 285 (1962). *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admn. & Fin.*, 369 Mass. 562, 568 (1976).

[10] Note that the State Building Code would provide uniformity and that, if applicable (see footnote 3, *supra*, and art. 1, § 114.3), the State code would cover buildings of the district. Article 1, § 108.2, of the State Building Code, as amended effective Feb. 1, 1976; also see G. L. c. 143, § 3A.

While we cannot take judicial notice of municipal by-laws not in the record, we can take notice of regulations accessible to us as a State publication. *Cohen* v. *Assessors of Boston*, 344 Mass. 268, 269 (1962). *Bagge's Case*, 5 Mass. App. Ct. 839 (1977).

*bury, supra,*[11] or even suggest that the municipal by-law conflicts with, or in any way hinders, the State and Federal duties imposed on the plaintiffs. For the foregoing reasons, a declaration of the plaintiff's rights as to the necessity of a permit cannot be made on the present record. *Greenberg* v. *Assessors of Cambridge,* 360 Mass. 418, 420-421 (1971). *George F. Davey, Inc.* v. *Norton,* 2 Mass. App. Ct. 190, 195 (1974).

The judgment is vacated and the case is remanded to the Superior Court.[12] If the plaintiff, within thirty days from the date of the rescript, files an amended complaint explicitly seeking a determination that it need not obtain a permit, the Superior Court shall conduct further proceedings consistent herewith. The court may, in its discretion, before such claim is adjudicated, also expressly direct the entry of final judgment under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), declaring that a permit fee is not required. If the plaintiff makes no such filing, a judgment declaring that a permit fee is not required shall be entered by the Superior Court upon the expiration of the thirty-day period.

*So ordered.*

---

[11] The *Sudbury* case decides that uniformity is necessary for safety standards for transmission lines which pass through more than one city or town.

[12] The judgment entered in this case was irregular in form as it merely provided "that judgment be entered for the plaintiff" and did not, as required, declare the rights of the parties. *Boston* v. *Massachusetts Bay Transp. Authy.,* 373 Mass. 819, 829 (1977). *Gleason* v. *Galvin,* 374 Mass. 574, 577.