COUNTY COMMISSIONERS OF BRISTOL *vs.* CONSERVATION COMMISSION OF DARTMOUTH & another.

Bristol. March 4, 1980. — May 21, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Zoning*, Public authority, Land held by county. *Municipal Corporations*, By-laws and ordinances, Home Rule Amendment. *County*, Municipal zoning by-laws.

Land on which county commissioners sought to have a new jail constructed, and any structures to be erected thereon, were not subject to a municipal zoning by-law. [708] WILKINS, J., dissenting.

CIVIL ACTION commenced in the Superior Court on January 4, 1979.

The case was heard by *Garrity*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*James M. Cronin* (*Leonard E. Perry* with him) for the defendants.

*William F. Long, Jr.,* for the plaintiffs.

HENNESSEY, C.J. In 1973 the Legislature authorized the county commissioners of Bristol County to construct a new jail and to acquire the necessary land by purchase or eminent domain. See St. 1973, c. 412.[1] As a result of this leg-

---

[1] Statute 1973, c. 412, provides in relevant part the following: "Section 1. For the purpose of constructing a new jail, house of correction and sheriff's quarters in Bristol County, the county commissioners of said county may erect on land acquired for such purpose, a suitable building or buildings, and may originally equip and furnish the same.

"Section 2. For the purposes of section one, the county commissioners of Bristol county may take by eminent domain, after a public hearing, or acquire by purchase or otherwise any land and buildings that may be necessary for said purpose."

islative mandate and after appropriate study and investigation, the county commissioners devised a plan to build the jail within the confines of the town of Dartmouth in an area of the town zoned for limited industrial use.[2] The county commissioners applied, in compliance with the requirements of G. L. c. 131, § 40, to the conservation commission of the town of Dartmouth for a determination of what conditions, if any, were to be applied to the construction of the proposed new jail in order to respond to specified environmental considerations. The conservation commission determined that the proposed site fell within the scope of G. L. c. 131, § 40, and that the county commissioners were therefore required to file with the conservation commission a notice of intent to engage in construction activity on the land.

The notice of intent was submitted in the recommended form, including complete environmental data along with the $25 filing fee. General Laws c. 131, § 40, as amended provides that "[n]o such notice shall be sent before all . . .

---

[2] The proposed locus is within a district covered by § 5C of the Dartmouth zoning by-law which reads as follows: "SECTION 5C. LIMITED INDUSTRIAL DISTRICTS. Within any Limited Industrial District, as indicated on the Zoning Map, no building or premises shall be used and no building or structure shall be erected which is intended or designed to be used, in whole or in part, for other than one or more of the following specified purposes . . ..

(1) Wholesale warehouse, including office and showroom facility.

(2) Light industrial uses, including manufacturing, storage, processing, fabrication, packaging, assembly, printing or reproduction, research, experimentation and testing.

(3) Store or service establishment for retail or wholesale trade display or service of products manufactured on the same site or at other sites of the same company or corporation. Such store or service establishment shall be clearly incidental to the primary industrial use.

. . .

(4) Commercial kennel or hobby kennel, subject to the following conditions:

(a) That the Board determine that such use is not injurious to the district.

(b) That the lot on which the kennel is to be maintained have a minimum area of one acre.

(c) That the Board may impose other conditions it deems appropriate."

variances . . . required by local by-law with respect to the proposed activity, which are obtainable at the time of such notice, have been obtained, except that such notice may be sent, at the option of the applicant, after the filing of an application for said . . . variances . . . ." The conservation commission notified the county commissioners that their notice could not be accepted until an application had been made for a zoning variance from the Dartmouth zoning board of appeals.

The plaintiff county commissioners of Bristol then filed this action seeking a declaratory judgment that the proposed county use gave the land in question immunity from the Dartmouth zoning by-law. After a hearing, the Superior Court issued a declaratory judgment that the land and any structures to be erected thereon by the county are not subject to the municipal zoning by-law of the town of Dartmouth. The defendant conservation commission of Dartmouth filed a motion to alter or amend judgment under Mass. R. Civ. P. 59, 365 Mass. 827 (1974), claiming that a presumption of county immunity from municipal zoning asserted as the basis of decision contravened the Home Rule Amendment.[3] The Superior Court denied this motion without a hearing. The defendants appealed.

There is no error. We therefore sustain the order, ruling and judgment of the Superior Court that the land in Dartmouth in which the plaintiff county commissioners seek to have a new jail constructed, and any structures to be erected thereon, are not subject to the municipal zoning by-law of the town of Dartmouth.

The general rule in this and other jurisdictions is that "a State is immune from municipal zoning regulations, absent statutory provision to the contrary." *Medford* v. *Marinucci Bros.*, 344 Mass. 50, 56 (1962), and cases cited. This rule has its origins in *Teasdale* v. *Newell & Snowling Constr. Co.*, 192 Mass. 440 (1906). In that case the metropolitan

[3] Article 2 of the Articles of Amendment of the Massachusetts Constitution as appearing in art. 89 of the Articles of Amendment.

park commissioners had made a contract with the defendant contractor for grading and other work on land in Quincy which they had taken for park purposes. The commissioners authorized the defendant to build a temporary stable on the property to accommodate the large number of horses used in the project. The health laws of the municipality prohibited such a stable. We held the health laws inapplicable under the circumstances, reasoning that a "general law made for the regulation of citizens must be held subordinate to this special statute regulating the use of the property of the State unless there is express provision to the contrary. It is not to be presumed that the Legislature intended to give to the local licensing board the authority to thwart the reasonably necessary efforts of the park commissioners to perform their duty as agents of the State." *Id.* at 443.

The same reasoning which was applied to exempt the metropolitan park commissioners from the Quincy health laws in *Teasdale* was applied to exempt the commissioners of public works from a Medford zoning ordinance in *Medford* v. *Marinucci Bros.*, 344 Mass. 50 (1962). In that case, the Department of Public Works had made a contract with the defendant contractor for building a section of an interstate highway. The defendant received permission from the chief engineer of the Department of Public Works to construct a railroad loading area at a particular location in the city of Medford which was zoned for single residences. The city sued to enjoin this use of the land under the authority of its zoning ordinance. In ruling against the city we stated that "[w]e cannot conclude that by enacting the Zoning Enabling Act the Legislature intended to authorize a municipality to thwart the Commonwealth in carrying out the functions of government." *Id.* at 57.

We reached the same conclusion in *Village on the Hill, Inc.* v. *Massachusetts Turnpike Auth.*, 348 Mass. 107 (1964). In that case the Massachusetts Turnpike Authority had taken land by eminent domain from a private corporation, Rivett Lathe & Grinder, Inc. (Rivett), in connection with extending the Massachusetts Turnpike. The authority

then agreed to sell to Rivett another lot on which Rivett could relocate its plant. In accordance with its purchase and sale agreement with the authority, Rivett entered the property and began construction of its new plant before title had been conveyed from the authority to Rivett. The plaintiff petitioned for a writ of mandamus to compel the building commissioner of Boston to enforce the Boston zoning law, which placed part of the land upon which the factory building was being constructed in a general residence district.

At the time of the trial legal title to the premises, including the building being constructed there by Rivett, remained in the authority. In concluding that this property was not subject to the Boston zoning regulation we reasoned as follows: "Although the property held by the authority is eventually to belong to the Commonwealth (see St. 1952, c. 354, § 17), it is not now owned by the Commonwealth. Nevertheless, the Legislature . . . made the authority sufficiently governmental in character so that the actual construction and operation of the turnpike, its essential 'government function,' and action reasonably related to that function, should not be prevented by a zoning statute applicable to one municipality or by a local zoning ordinance or by-law." *Village on the Hill, Inc.* v. *Massachusetts Turnpike Auth., supra* at 118.

As these cases demonstrate, an entity or agency created by the Massachusetts Legislature is immune from municipal zoning regulations (absent statutory provision to the contrary) at least in so far as that entity or agency is performing an essential governmental function.[4] It is clear that a coun-

---

[4] The Attorney General addressed a question similar to the one at bar in Rep. A.G., nub. Doc. No. 12, 197, 198 (1967), in which an airport commission, a creature of the State Legislature, was refused a zoning exemption by a municipality to build an airport facility. The Attorney General wrote as follows: "It is well settled that local zoning by-laws do not apply to the Commonwealth, or instrumentalities of the Commonwealth, when acting in pursuance of a public function on land of the Commonwealth. *Teasdale* v. *Newell & Snowling Construction Co.*, 192 Mass. 440 [1906]."

ty stands in the same position as the other legislatively created entities discussed above for purposes of applying this rule. Like the Massachusetts Turnpike Authority, which we described in *Massachusetts Turnpike Auth. v. Commonwealth*, 347 Mass. 524, 525 (1964), as "a body politic and corporate . . . and . . . a public instrumentality performing an essential governmental function," counties also are "organized by the General Court for the convenient administration of some parts of government. They are bodies politic and corporate. They exist solely for the public welfare." *County of Middlesex v. Waltham*, 278 Mass. 514, 516 (1932). "They may be changed at the will of the Legislature, and the character and extent of the sovereign powers to be exercised through them are subject to modification in like manner, according to legislative judgment of the requirement of the interests of the public."[5] *Boston v. Chelsea*, 212 Mass. 127, 129 (1912). See also G. L. c. 34, § 1. What the plaintiff county commissioners seek to accomplish here is clearly the execution of an essential governmental function. General Laws c. 34, § 3, as amended through St. 1978, c. 478, § 17, provides in part specifically that "[e]ach county shall provide suitable jails, houses of correction, fireproof offices and other public buildings necessary for its use." Therefore, our reading of Massachusetts case law leads to the conclusion that the Dartmouth zoning by-law is inapplicable in this circumstance.

"*Medford v. Marinucci Bros.*, 344 Mass. 50 [1962], the most recent case on this point, held that a highway contractor was not required to comply with local zoning by-laws in carrying out a construction contract for a state highway, even though his contract required him to comply with local by-laws. This principle is not confined to instances where the land is directly owned by the Commonwealth, but extends to instrumentalities of the state when engaged in their public function unless the Legislature has indicated a different intention."

[5] A variant of this general principle has been applied to counties in *County of Middlesex v. Waltham*, 278 Mass. 514, 516 (1932), wherein we ruled that "[l]and held by counties actually devoted, or designed to be devoted within a reasonable time, to public uses is exempt from taxation [by the town in which it is situated] *unless there is special statutory provision to the contrary*" (emphasis supplied).

The defendant nevertheless argues that a proper reading of the pertinent sections of The Zoning Act (G. L. c. 40A) leads to the contrary conclusion. The defendant directs us to § 3 of G. L. c. 40A (inserted by St. 1975, c. 808, and amended by St. 1977, c. 860) which provides in part that, "[n]o zoning ordinance or by-law shall . . . prohibit, regulate or restrict the use of land or structures for religious purposes or for educational purposes on land owned or leased by the commonwealth or any of its agencies, subdivisions or bodies politic or by a religious sect or denomination, or by a nonprofit educational corporation; provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements . . . ." The defendant argues that § 3's explicit exemption for land or structures used for religious or educational purposes, and the absence of any such exemption for other essential governmental purposes, indicates an intent that land or structures devoted to such other purposes should not be exempt from municipal zoning regulation.

We do not agree with the defendant's proffered interpretation.[6] The defendant has failed to read the statute as a whole and to interpret § 3 in light of the statutory purposes. See *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 190 (1976); *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967). Section 2A of

---

[6] The defendant relies in making this argument on the familiar doctrine of statutory interpretation that express reference in a statute to one matter excludes by implication other similar matters not mentioned. While this doctrine can be of help in certain situations, see *General Elec. Co.* v. *Commonwealth*, 329 Mass. 661, 664 (1953), we do not apply it blindly when the results would be illogical or contrary to sound precedent. For example, in *Medford* v. *Marinucci Bros.*, 344 Mass. 50, 56 (1962), we held that the absence of any language in the old Zoning Enabling Act exempting property owned by the Commonwealth from municipal zoning could not be construed as indicating a legislative intent that the act apply to such land.

St. 1975, c. 808, states the purposes for which zoning ordinances are authorized in the following terms. "This act is designed to provide standardized procedures for the administration and promulgation of municipal zoning laws. This section is designed to suggest objectives for which zoning might be established which include, but are not limited to, the following: — . . . to facilitate the adequate provision of transportation, water, water supply, drainage, sewerage, schools, parks, open space and other public requirements." To say that § 3 exempts only religious and educational institutions from municipal zoning regulations is inimical to the purpose of the act to facilitate the provision of public requirements. Such an interpretation of § 3 would subject most public buildings to municipal zoning regulations and would give a municipality the power effectively to preempt the construction of facilities at the State or county level.

Properly construed, § 3 does not allow municipal zoning regulation of land or structures owned or leased by the Commonwealth or by its bodies politic and devoted to an essential governmental function. Instead, § 3 merely permits formerly exempt land or structures devoted to religious or educational purposes to be subjected to reasonable municipal zoning dimensional, but not use, requirements.

Our interpretation of § 3 is bolstered by the fact that when the Legislature has intended to confer a "municipal veto" upon action taken by an entity or agency performing an essential governmental function it has done so in unmistakable terms. See *Medford* v. *Marinucci Bros.*, 344 Mass. 50, 56 (1962). This legislative practice is clearly exemplified by G. L. c. 34, § 25, as amended through St. 1977, c. 350, which authorized county commissioners to acquire "such real property within their respective counties as may be necessary to maintain, improve, protect, limit the future use of or otherwise conserve and properly utilize open spaces, and may control and manage the same; *provided that such acquisition has been approved* by the department of environmental management and the conservation committee of the city or town within which the land lies, or if

such city or town has no conservation committee, by a two thirds vote of the city council in the case of a city and by a two thirds vote of the board of selectmen in the case of a town . . ." (emphasis supplied). By contrast, such terms conferring priority on municipalities over the proposed actions of the plaintiff county commissioners appear neither in § 3 of G. L. c. 40A nor in St. 1973, c. 412.

The defendant argues finally that the result reached by the Superior Court is contrary to the spirit and letter of art. 2 of the Amendments to the Massachusetts Constitution, as appearing in art. 89 of the Amendments (Home Rule Amendment). The Home Rule Amendment has provided a direct constitutional grant of certain powers to municipalities. This grant of power is embodied in § 6 of art. 2 which reads, in part, as follows: "Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court by section eight . . . ." Section eight reads in pertinent part as follows: "The general court shall have the power to act in relation to cities and towns, but only by general laws which apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two, and by special laws enacted (1) on petition filed or approved by the voters of a city or town, or the mayor and city council, or other legislative body, of a city or the town meeting of a town, with respect to a law relating to that city or town; (2) by a two-thirds vote of each branch of the general court following a recommendation by the governor; (3) to erect and constitute metropolitan or regional entities, embracing any two or more cities or towns, or established with other than existing city or town boundaries, for any general or special public purpose or purposes, and to grant these entities such powers, privileges and immunities as the general court shall deem necessary or expedient for the regulation and government thereof; or (4) solely for the incorporation or dissolution of

cities or towns as corporate entities, alteration of city or town boundaries, and merger or consolidation of cities and towns, or any of these matters."

Under the terms of § 6, a municipal by-law is valid in so far as it is not inconsistent with the laws enacted by the Legislature in conformity with its reserved powers. "In determining whether a local ordinance or by-law is 'not inconsistent' with any general law within the meaning of those words in § 6 of the Home Rule Amendment . . . the same process of ascertaining legislative intent must be performed as has been performed in the Federal preemption cases and in our own cases involving 'inconsistent' . . . local ordinances or by-laws. . . . If the Legislature has made no explicit indication of its intention in this respect, a legislative intention to bar local ordinances and by-laws purporting to exercise a power or function on the same subject as State legislation may nevertheless be inferred in all the circumstances. . . . If the State legislative purpose can be achieved in the face of a local ordinance or by-law on the same subject, the local ordinance or by-law is not inconsistent with the State legislation . . . ." *Bloom* v. *Worcester,* 363 Mass. 136, 155-156 (1973).

The purpose of St. 1973, c. 412,[7] is clear on its face — to empower the commissioners of Bristol County to construct a jail, house of correction and sheriff's quarters within the county and to acquire *any land and buildings that may be necessary* for this construction. The municipal ordinance of the town of Dartmouth is therefore inconsistent with St. 1973, c. 412, in so far as it impedes the county commissioners from performing their statutory task of selecting the jail site, acquiring the land and erecting the required structures.

The only question which remains under the Home Rule Amendment is whether St. 1973, c. 412, conforms with the precepts of § 8. Several of our recent cases have clarified the requirements of this section. For example, in *Del Duca*

---

[7] For the text of this statute see note 1, *supra*.

v. *Town Adm'r of Methuen,* 368 Mass. 1 (1975), a municipality had established a planning board in conformity with G. L. c. 41, § 81A.[8] The municipality later adopted a home rule charter creating a town council which adopted an ordinance creating a new planning board with a partially different membership. In rejecting the contention that the town had been granted the power to do this by § 6 of the Home Rule Amendment, we reasoned as follows: "The powers reserved to the general court by § 8 include 'the power to act in relation to cities and towns, but only by general laws which apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two.' . . . It is plain that G. L. c. 41, § 81A, is a general law that in its mandatory aspect applies alike to a class of not fewer than two cities (all cities except Boston) and alike to a class of not fewer than two towns (all towns having populations of 10,000 or more). Thus, there can be no question that G. L. c. 41, § 81A, remains effective as to both of those classes, notwithstanding the Home Rule Amendment" (citations omitted). *Del Duca* v. *Town Adm'r of Methuen, supra* at 8-9. See also *Arlington* v. *Board of Conciliation and Arbitration,* 370 Mass. 769, 773-774 (1976) (arbitration provision in statute which provided for wages and benefits for police officers and firefighters valid under Home Rule Amendment since it applies generally to all municipalities in conformity with § 8); *New England LNG Co.* v. *Fall River,* 368 Mass. 259, 267 (1975) (statute vesting authority in Department of Public Utilities to control storage of natural gas takes precedence over local zoning law because statute is of general application in compliance with § 8); *Doris* v. *Police Comm'r of Boston,* 374 Mass. 443, 443-447 (1978) (statutory residency requirement for police officers valid de-

---

[8] General Laws c. 41, § 81A, as amended through St. 1961, c. 276, § 2, provides in part: "Any city except Boston, and, except as hereinafter provided, any town may at any time establish a planning board hereunder. Every town not having any planning board shall, upon attaining a population of ten thousand, so establish a planning board under this section."

spite local nature of subject because there is no restriction in § 8 on subject matter of statute of general applicability).

The special legislation in question in the instant case, St. 1973, c. 412, states as its purpose the construction of a new jail in Bristol County. Since Bristol County represents a class of two or more cities and towns, this section complies with § 8. Section 2 of the statute provides that the county commissioners may take by eminent domain or acquire by purchase "any land and buildings that may be necessary for said purposes." This provision is also valid under § 8 since it does not specify the land of any city or town in particular. Thus, the statute satisfies the requirements of § 8 and is valid under the Home Rule Amendment.

In summary, it is instructive to bear in mind that this is neither a "town's rights" case, nor a "county's rights" case, but rather a question of legislative intent. Our reading of The Zoning Act convinces us that the Legislature did not intend by this act to subject essential public buildings of the Commonwealth to municipal zoning regulations. Not only is this conclusion consistent with prior case law but it is also mandated by the language of The Zoning Act itself. Moreover, we are averse to rule that the Legislature can override local zoning only by explicit statutory language lest we cause undue confusion in a host of other situations in which the Legislature did not intend to yield to local regulations but did not specifically refer to them in the statute. Finally, our reading of §§ 6 and 8 of the Home Rule Amendment does not alter our conclusion that the land in Dartmouth on which the county commissioners seek to have a new jail constructed and any structures to be erected thereon are not subject to the municipal zoning by-law of the town of Dartmouth.

*Judgment affirmed.*

WILKINS, J. (dissenting). The only issue of any substance in this case is whether the local zoning by-law (which, under the Home Rule Amendment, may be regarded as having the force of a statute) is to be treated as overriden by a statute that is silent on the right of the county commissioners to disregard local zoning restrictions. I think the court does a disservice not only to the spirit but also to the provisions of the Home Rule Amendment by relying on pre-Home Rule Amendment decisions to attribute to the Legislature an intention to override local legislation by a statute that is entirely silent on the question. I have no doubt that, under the Home Rule Amendment, the Legislature could properly have authorized the county commissioners to proceed in disregard of local zoning regulations.

Is it as clear as the court's opinion suggests that the Legislature intended by implication to authorize the county commissioners to place the new county jail in any residential neighborhood of their choice in the county? The county commissioners happened to select a site in which the proposed use may not be substantially incompatible with other uses authorized under the town's zoning by-law. However, the principle established by the court's decision is that every grant of the power of eminent domain to a State entity or agency (at least if enacted after the Home Rule Amendment) contains an implied right to disregard explicit, lawful, local restrictions. The inference that the Legislature intended to bar the application of local zoning regulations is not warranted in all the circumstances. Particularly, there has been no showing that the county commissioners cannot achieve their objectives without acting contrary to local zoning regulations. It would be wiser under home rule principles to require the Legislature in cases such as this to be explicit on the subject of overriding local regulations.