COMMONWEALTH vs. ROSS PAASCHE
(and seven companion cases[1]).

Barnstable.  November 10, 1983. — January 30, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Fisheries.  Municipal Corporations,* Regulations.  *Practice, Criminal,*
Report.

This court declined to express its views on constitutional questions raised
    by the report of a criminal case against alleged violators of a town's
    shellfish regulations, where a preliminary question as to the town's
    statutory authority to adopt the regulations had not been argued.
    [21-22]

COMPLAINTS received and sworn to in the Second Barn-
stable Division of the District Court Department on August
20, 1982.

After a jury trial was claimed in the First Barnstable Divi-
sion, the cases were reported to the Appeals Court by *Shea,*
J.  The Supreme Judicial Court ordered direct review on its
own initiative.

*Daniel M. Blackmon & Charles A. Perkins, Jr.,* for the
defendants, submitted a brief.

WILKINS, J.  A judge sitting in the jury-of-six session of
the Barnstable District Court has reported this case involving
the legality of applying the shellfish regulations of the town
of Provincetown to the harvesting of sea or surf clams by the
defendants.  The basic question is whether the town may
lawfully bar nonresidents, such as the defendants, from har-

---

[1] Of the companion cases, two are against Ross Paasche, two are against
Donald Curley, and one is against each of Scott Nolan, Glen Shields, and
Scott Torrey.  The report of the cases involving Scott Nolan and Glen
Shields must be discharged.  The statement of agreed facts does not refer
to them and no brief has been filed on their behalf.  We shall refer to the
three remaining defendants as the defendants.

vesting sea or surf clams in the ocean waters lying within the town's boundaries.

The case comes to us on a statement of agreed facts that was filed after the judge reported the case to the Appeals Court.[2] The complaints charge the defendants Paasche and Curley with harvesting shellfish from the town on June 1, 1982, without being licensed to do so, in violation of the town's shellfish regulations. All three defendants were also charged with similar violations committed on June 10, 1982. The maximum penalty for each violation is $50.[3]

The defendants argue, and the judge seems to have agreed, that under the shellfish regulations adopted by the selectmen pursuant to G. L. c. 130, § 52, a nonresident who is not a real estate taxpayer in Provincetown may not obtain a commercial license for the harvesting of sea clams.[4] We shall assume, for the purposes of this case, that the town undertook to forbid fishing for sea clams within the town by persons, such as the defendants, who neither live in the town nor pay real estate taxes there.

Each defendant is a commercial fisherman, making his living by fishing for sea or surf clams. The defendant Paasche has a State license issued pursuant to G. L. c. 130, § 80, to fish for sea clams. He owns and is captain of a fifty-eight foot fishing vessel specially rigged for hydraulic dredging of sea and surf clams. The vessel is "federally licensed and enrolled to carry on mackerel fishing." The defendants Curley and Torrey were crew members on the vessel at the time of their alleged violations. On the days of the alleged violations, the vessel was operating in navigable waters off

---

[2] We transferred the reported case to this court on our own motion.

[3] The defendant Paasche was also charged in another complaint with failing to stop when requested to do so by an assistant harbor master on June 10, 1982. The statement of agreed facts provides no facts warranting a conviction on this charge. A finding of not guilty shall be entered on this complaint (JR 820414 C).

[4] Section 10 of the town's shellfish regulations states: "Commercial licenses shall be issued to legal residents and/or real estate taxpayers of Provincetown for the taking of sea clams only and with a limit of 20 bushels on any given day per boat."

the shores of Provincetown where sea or surf clams are indigenous. The defendant Paasche sells the clams harvested by his vessel to a company in Rhode Island, which processes them for sale. The judge found that "the Defendant's vessel . . . was harvesting sea clams within one and one half miles of the shores of Provincetown." We assume, but it is not expressly stated, that the judge found that, on each relevant day, the defendants were harvesting sea clams within the limits of the town. See G. L. c. 42, § 1, and G. L. c. 1, § 3, which together define the seaward boundaries of cities and towns.

The defendants sought dismissal of the complaints on the ground that the regulation barring them from fishing for sea clams was unconstitutional in violation of (1) the privileges and immunities clause (art. 4, § 2[1]) of the Constitution of the United States, (2) the commerce clause of the Constitution of the United States, (3) equal protection guarantees of the State and Federal Constitutions, and (4) the supremacy clause of the Constitution of the United States. The defendants do not argue that the town lacked statutory authority to prohibit the harvesting of sea clams by persons who had a State license, pursuant to G. L. c. 130, § 80, and by employees of such persons.

The importance of this case as a test of the lawfulness of the restrictions of the Provincetown shellfish regulations has been greatly diminished by the enactment of St. 1982, c. 363, amending G. L. c. 130, § 52. Section 52 now states that the term "shellfish" does not include the commercial harvest of sea clams and ocean quahogs. This amendment, which expressly eliminates the right of municipalities to regulate the commercial harvesting of sea clams, was made effective by act of the Governor on July 22, 1982, shortly after the events giving rise to the complaints in this case. St. 1982, c. 363. Because of this amendment, the office of the district attorney for the Cape and Islands District has expressed its desire to withdraw as counsel in this case in favor of representation of the Commonwealth by counsel for the town. A motion to substitute counsel and for enlargement of time to

file the Commonwealth's brief was allowed on April 20, 1983, while this case was in the Appeals Court. Town counsel has advised this court, however, that the town will not file a brief, and none has been filed. Thus we have a brief on only one side of this case, raising significant constitutional issues. We state for the future that when, pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979), a judge has determined prior to trial that there is a question of law "so important or doubtful as to require the decision of the Appeals Court" and the Commonwealth fails to file an appellate brief, we shall consider the absence of a brief as an indication that the Commonwealth has elected not to prosecute the criminal charge.

We do not decide constitutional questions unless they must necessarily be reached. See *Lockhart* v. *Attorney Gen.,* 390 Mass. 780 (1984). There is a preliminary question, not discussed in the defendants' brief, that should be decided before any constitutional issue is reached. That question is whether the town had statutory authority to prohibit commercial shellfishing by nonresidents even before the 1982 amendment of G. L. c. 130, § 52, particularly if a person had a State commercial fisherman permit under G. L. c. 130, § 80, to take sea clams. It is arguable that the Legislature did not intend that such a person must also obtain a permit from each municipality in which he harvests sea clams and then comply with the detailed requirements of each set of local regulations.[5] This court has found a legislative intent to prevent the application of local regulations in circumstances no more compelling than those in this case. See *County Comm'rs of Bristol* v. *Conservation Comm'n of Dartmouth,* 380 Mass. 706 (1980); *id.* at 718 (Wilkins, J., dissenting). It should also be noted that the regulations involved here were adopted by the selectmen and not as a by-

[5] The Provincetown shellfish regulations purport to limit the daily commercial take of clams by residents and taxpayers to twenty bushels for each boat and to require all shellfish taken commercially to be unloaded at a designated wharf.

law by the town.[6]  There is, therefore, a question whether the town may rely on the Home Rule Amendment (art. 2 of the Amendments to the Massachusetts Constitution, as appearing in art. 89 of the Amendments) in support of its authority to adopt the regulations.

Because a preliminary question not argued to us must first be decided, we discharge the report of these cases, except as to the complaint against the defendant Paasche for failing to stop when requested to do so by an assistant harbor master (see n.3 above) as to which a finding of not guilty is to be entered.

*So ordered.*

---

[6] The selectmen "if so authorized by their own town . . . may control, regulate or prohibit the taking of . . . any or all kinds of shellfish . . . and may, from time to time, without other or special authority therefor, make any regulations not contrary to law in regard to said fisheries." G. L. c. 130, § 52, as amended through St. 1977, c. 447, § 2.  The record does not indicate explicitly that the Provincetown town meeting authorized the selectmen to adopt regulations, but it is implied in the agreement that the shellfish regulations were duly adopted by the board of selectmen pursuant to G. L. c. 130, on September 25, 1978.