## Greater Lawrence Sanitary District *vs.* Town of North Andover & others.[1]

Essex. January 7, 2003. - March 20, 2003.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Greater Lawrence Sanitary District. Practice, Civil,* Summary judgment. *Municipal Corporations,* Regulations, Sewers, By-laws and ordinances. *Zoning,* Public authority, By-law, Building permit. *Sewage Disposal. Nuisance.*

This court concluded that the doctrines of essential governmental functions and preemption did not prevent a town from imposing antinuisance conditions on the operation of a sludge treatment facility operated by a regional sanitary district if the conditions did not interfere with or burden the district's performance of its legislatively mandated waste water treatment function and did not conflict with the regulatory authority granted the Department of Environmental Protection; however, where factual questions, such as whether the particular existing conditions would interfere with the district authority's legislative mandate, could not be decided on the present record, the court remanded the case for further proceedings. [20-26]

This court concluded that a town had the authority to issue building permits for a proposed sludge treatment facility operated by a regional sanitary district, where nothing in the district authority's enabling statute or in the building code suggested that the district authority was not subject to regulation by the local building inspector, and where obtaining the permits did not interfere with the authority's ability to fulfil its essential governmental function; however, where the question whether the town was contractually obligated to refund the building permit fees under a previously executed memorandum of understanding could not be decided on the present record, the court remanded the case for further proceedings. [26-27]

Civil actions commenced in the Superior Court Department on July 26, 2000.

---

[1] The board of health of North Andover and the board of selectmen of North Andover. The first amended verified complaint also named the Massachusetts Departments of Environmental Protection and Public Safety, and New England Fertilizer Company (NEFCO). The Superior Court judge granted the Commonwealth's motion to dismiss, which was not appealed. Because NEFCO joined the motion for summary judgment of the Greater Lawrence Sanitary District (GLSD), the Superior Court treated NEFCO as a plaintiff for purposes of the motion. NEFCO has not appealed from the judge's decision.

The cases were heard by *Isaac Borenstein,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Kenneth L. Kimmell (Elizabeth M. Heller* with him) for Town of North Andover.

*William H. DiAdamo* for Greater Lawrence Sanitary District.

The following submitted briefs for amici curiae:

*Thomas F. Reilly,* Attorney General, *& Kirsten H. Engel,* Assistant Attorney General, for Department of Environmental Protection.

*Thomas P. Crotty* for Carver Marion Wareham Regional Refuse Disposal District.

IRELAND, J. The plaintiff, Greater Lawrence Sanitary District (GLSD), and the defendants, the town of North Andover, its board of health, and its board of selectmen (town), appeal from a Superior Court judge's award of summary judgment ordering, inter alia, (1) that the town does not have authority to impose any conditions on GLSD's sludge treatment facilities; and (2) that a permanent injunction issue, restraining the town from interfering with or attempting to exert authority over GLSD. The town claims that the judge erred in concluding that it did not have authority to impose antinuisance conditions on the operation of the sludge treatment facilities. GLSD also appeals, contending that it is entitled to a refund of the building permit fee. We granted the parties' applications for direct appellate review. Because we conclude that the doctrines of essential governmental functions and preemption limit, but do not completely prohibit, the town from imposing antinuisance conditions, we vacate the judgment of the Superior Court and remand the case for further proceedings consistent with this opinion. In addition, we reject GLSD's claim for a refund to the extent that it is based on the premise that the town lacks authority to issue a building permit. However, the record is inadequate to decide whether GLSD is contractually entitled to such a refund.

I. *Background.*

We take our facts from the judge's memorandum of decision, supplemented by undisputed facts in the record. GLSD,

established by the Legislature in 1968, is a body politic and corporate responsible for planning, building, and operating facilities to treat wastewater of its member communities. St. 1968, c. 750, §§ 2, 3, 5. The district is comprised of the city of Lawrence, the towns of Methuen, Andover, North Andover, and (by contract) Salem, New Hampshire. St. 1968, c. 750, as amended by St. 1982, c. 387. In 1977, GLSD began receiving wastewater, and disposed of the resulting sludge through the use of on-site incinerators.[2] Eleven years later, the Commonwealth shut down the sludge incinerators because of odor and water pollution problems, and the Attorney General filed suit against GLSD under the Massachusetts Clean Waters and Clean Air Acts. As a result, the parties entered into an agreement that required GLSD to update and improve its facilities to meet Federal and State requirements.

Since 1988, GLSD has employed various short-term remedies for the transportation and disposal of wastewater sludge, none of which is appropriate as a permanent solution. The Legislature, in 1997, authorized GLSD to enter into contracts for the design, construction, and operation "of an on site biosolids processing facility," and the "disposal and beneficial use of sludge related thereto." St. 1997, c. 213, § 1. By 1998, GLSD developed a plan for the construction and operation of facilities to improve sludge thickening and dewatering, reduce disease-causing organisms in the sludge (referred to as pathogens), and control odors (contract I facility). The report also suggested the use of a thermal drying facility for the treated sludge (contract II facility), which would produce an end product that would be sold as fertilizer pellets. In February, 1999, GLSD awarded the contract II facility to the New England Fertilizer Company (NEFCO). Both the contract I and II facilities have been approved by the Department of Environmental Protection (department), the town's conservation commission, and the Federal Aviation Administration.[3]

During the planning and development of the facilities, the

[2]Sludge is made up of partially cleansed solids that have been removed from the wastewater. It is infectious and requires special handling.

[3]Approval from the Federal Aviation Administration was required because the proposed contract II facility included a smokestack.

town requested, among other things, that GLSD apply for a site assignment pursuant to G. L. c. 111, § 143,[4] and that it pay a $200,000 building permit application fee. In an effort to resolve the intense disagreement over the town's authority to regulate the projects, GLSD and the town executed a memorandum of understanding (initial MOU) in March of 2000. Although the initial MOU acknowledged the parties' opposing positions with respect to the town's authority to regulate the proposed facilities, it provided a process for the town and its board of health (board) to review the environmental, public health, and safety impacts of the facilities.

By June 18, 2000, the town issued building permits for the contract I and II facilities. However, both permits contained statements that the board might still disapprove the facilities, or impose conditions on the construction or operation of the facilities. On June 19, 2000, the board voted to approve the contract I facility but not the contract II facility.

GLSD commenced this action in July, 2000, seeking declaratory and injunctive relief. In essence, the seven-count complaint sought a determination that the town violated the initial MOU, and that GLSD is immune from all town regulation concerning the contract I and II facilities, including site assignment, building permits, and any conditions regarding the construction or operation of the facilities. GLSD filed a motion for summary judgment in September, 2000, and a hearing on the motion was scheduled for that same month.

According to the parties, the board rescinded its vote disapproving the contract II facility shortly after the summary judgment hearing. The parties further allege that the board issued an order in November, 2000, which it called "the final MOU," imposing numerous conditions with respect to air quality, odors, noise, and traffic generated by the operation of the contract I and II facilities. Although the judge issued his memorandum of decision more than one year after hearing the motion for sum-

---

[4]The town relied on the portion of G. L. c. 111, § 143, which states: "No trade or employment which may result in a nuisance or be harmful to the inhabitants, injurious to their estates, dangerous to the public health, or may be attended by noisome and injurious odors shall be established in a city or town except in such a location as may be assigned by the board of health . . . ."

mary judgment, that decision did not reference that the board had rescinded its vote to deny the site assignment and had instead ordered numerous conditions on the facilities' operation.[5] In holding that the department had sole authority to issue site assignments, the judge broadly concluded that GLSD was immune from all local regulation. The judge ordered the building inspector to issue another building permit for the contract II facility "without any conditions," and ordered that a permanent injunction issue restraining the town from "interfering with or attempting to exert authority over GLSD." The town appeals from the broad ruling that the town does not have authority to impose any conditions on the facilities.[6] GLSD argues that because the judge held that GLSD is immune from local regulation, he should have concluded that GLSD did not need a building permit and should have ordered the town to refund the permit fee. GLSD further contends that it is entitled to a refund of the building permit fee under the terms of the initial MOU.

II. *Discussion.*

"The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the

---

[5]The record includes two letters written by the town's attorney in October, 2000, informing the judge of the board's anticipated action and requesting that the court "refrain from ruling on the pending summary judgment motion." Such correspondence with the judge is inappropriate. A party requesting that the court take any action, including a request that it stay some action, is to be presented by motion, not by way of letter.

The record also includes supplemental memoranda, allegedly filed in the Superior Court in November, 2000, that delineate the parties' factual and legal arguments concerning the effect of the board's actions subsequent to the motion hearing. Despite a letter from the town's attorney stating that he would file the memoranda, the docket does not reflect that the papers were ever filed, and the judge's decision does not include any reference to the information contained in the memoranda. (The record also contains a request for oral argument on the issues raised by the parties' supplemental memoranda. Again, however, there is no indication that this request was filed with the court.) Whether the Superior Court actually received the supplemental memoranda does not affect our decision because GLSD's complaint asserted that the town was prohibited from imposing any conditions on the facilities, and the summary judgment decision gave GLSD relief in that comprehensive scope.

[6]There is no longer a dispute that the town lacks authority to issue a site assignment for the wastewater treatment facilities. At oral argument the town conceded that it could not prohibit or veto a site assignment, or select an alternative site for these facilities.

nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). "An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law." *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 536 (1992), citing *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 556 (1976). Because we conclude that the Superior Court judge erred as a matter of law in ruling that the town does not have authority to impose conditions on the proposed wastewater facilities, we vacate the grant of summary judgment.

A. *The town's authority to impose conditions.* The antinuisance conditions that the board seeks to impose relate to dust control and blasting, odor, noise, traffic, and miscellaneous other aspects of the facilities' operation.[7] The judge concluded that the town did not have authority to impose any conditions on the contract I and contract II facilities because (1) the department has plenary authority over the granting of site assignments for wastewater treatment facilities, and (2) GLSD is a legislatively created body performing an essential government function and therefore is immune from municipal regulation. The town contends that the judge erred in concluding that the doctrines of preemption and immunity constitute an absolute prohibition on the town's ability to impose conditions on the facilities to prevent nuisance conditions. We agree.

The doctrine of essential governmental functions prohibits municipalities from regulating entities or agencies created by the Legislature in a manner that interferes with their legislatively mandated purpose, absent statutory provisions to the contrary. See *Bourne* v. *Plante*, 429 Mass. 329, 332 (1999), quoting *County Comm'rs of Bristol* v. *Conservation Comm'n of Dartmouth*, 380 Mass. 706, 710 (1980). "The scope of the immunity

---

[7]The miscellaneous conditions include fire protection, town access to facilities, reimbursement for town services, and monitoring fees. The town's order also included ten conditions concerning air pollution. The town alleges, however, that the air pollution conditions were incorporated in a settlement agreement with the department, and therefore the town is no longer seeking to impose them.

is broad and [extends] to leased property and facilities." *Id.* at 713. It also applies to entity actions that are "reasonably related" to fulfilling the entity's essential governmental function. *Bourne* v. *Plante, supra,* citing *Village on the Hill, Inc.* v. *Massachusetts Turnpike Auth.,* 348 Mass. 107, 118 (1964), cert. denied, 380 U.S. 955 (1965).

The judge correctly noted that GLSD's legislative mandate involves "planning, building and operating facilities for the treatment and disposal of the wastewater generated by the designated towns." See St. 1968, c. 750, §§ 2, 5 (establishing GLSD as "a body politic and corporate" and delineating its authority); St. 1997, c. 213, § 1 (authorizing GLSD to contract for the "design, build, or operation[] . . . of an on site biosolids processing facility . . . and the transportation, marketing, disposal and beneficial use of sludge related thereto"). As the judge concluded, such activities are "vital to the health and welfare of the population of the member towns," and GLSD performs an essential governmental function. Furthermore, the GLSD statutes do not include anything that suggests that the Legislature intended "to confer a 'municipal veto' " over GLSD's operation of its facilities. See *County Comm'rs of Bristol* v. *Conservation Comm'n of Dartmouth, supra* at 713. GLSD is therefore immune from municipal regulation that has the effect of interfering with the construction and operation of the contract I and II facilities or otherwise hinders the accomplishment of its statutory mandate. This does not mean, however, that the legislatively created entity has absolute immunity from all local regulation. It remains subject to regulations, including antinuisance regulations, that do not interfere with its ability to fulfil its essential governmental purposes and have only a negligible effect on its operations. See, e.g., *Village on the Hill, Inc.* v. *Massachusetts Turnpike Auth., supra* at 118 ("That the turnpike operations of the authority are exempt from local zoning provisions does not mean that local zoning provisions are not applicable to land owned by the authority which has become wholly excess to the authority's essential turnpike function"). Whether the conditions in this case will interfere with GLSD's ability to fulfil its legislative mandate is a question of fact to be resolved on remand.

We now turn to the question whether the conditions ordered by the town are expressly or impliedly preempted by the department's regulatory authority. It is well settled that "[m]unicipalities may not adopt by-laws or ordinances that are inconsistent with State laws." *Boston Gas Co.* v. *Somerville*, 420 Mass. 702, 703-704 (1995), and cases cited (analyzing express and implied preemption). The judge correctly identified the department's broad statutory scheme to regulate water and air pollution in general and GLSD's facility in particular. For example, the Clean Waters Act, G. L. c. 21, §§ 26-53, charges the department's division of water pollution control (division) with the prevention, control, and abatement of water pollution. See G. L. c. 21, §§ 27, 53. The general mandate of the act also includes provisions specifically related to wastewater facilities.[8] In addition, the department must approve proposed sewerage systems before they can be established, G. L. c. 111, § 17, and must approve a town's acquisition of land "for the treatment, purification and disposal of sewage." G. L. c. 83, § 6. The department is also authorized to require operators of sewage treatment works to improve their facilities as necessary to prevent and abate nuisances. G. L. c. 83, § 7.

The department also has broad power to regulate air pollution. See G. L. c. 111, § 142A (authorizing department to adopt regulations "to prevent pollution or contamination of the atmosphere"). Pursuant to its authority, the department has promulgated general standards that prohibit emissions "which cause or contribute to a condition of air pollution," 310 Code Mass. Regs. § 7.09(4) (1994), in addition to regulations

---

[8]The Clean Waters Act includes the following sections concerning wastewater treatment facilities: the department's division of water pollution control (division) is required to "[a]dopt regulations requiring proper operation and maintenance of waste treatment facilities" (G. L. c. 21, § 27 [9]); the division may "propose water pollution abatement districts consisting of . . . cities or towns," and can order the "mandatory formation" of such districts (G. L. c. 21, § 28 [*a*] and [*b*]); the division "shall supervise the operation and maintenance of treatment works within the commonwealth" (G. L. c. 21, § 34); there is a "board of certification of operators of wastewater treatment facilities," charged with ensuring "the proper management, operation and maintenance of wastewater treatment systems and facilities" (G. L. c. 21, § 34A); a permit issued by the division is required for construction, installation, modification or operation of an outlet to discharge pollutants into waters of the Commonwealth (G. L. c. 21, § 43 [2]).

concerning the emission of dust, odor, and noise. See, e.g., 310 Code Mass. Regs. §§ 7.09(1), 7.10 (1994).

Moreover, the Legislature has specifically authorized the department to exercise control over GLSD. For example, GLSD's enabling statute required it to "present a plan for abatement of water pollution to the state division of water pollution control" (within the department). St. 1968, c. 750, § 5. The statute also requires the division to "supervise the operation and maintenance of the facilities." *Id.* at § 7. In addition, the department was specifically authorized to "issue project approval certificates with respect to" the biosolids processing facilities. St. 1997, c. 213, § 12.

While this statutory scheme clearly limits the town's ability to regulate wastewater facilities and sewage disposal, it does not prevent the town from imposing limited antinuisance conditions. The proposed conditions in this case are not preempted based on any express or implied conflict with the department's statutory authority.[9] We reject GLSD's argument that allowing the town to regulate nuisance conditions within the limitations set forth in this decision (i.e., conditions that do not prevent or interfere with GLSD's performance of its legislative mandate and that are not preempted by the department's regulatory authority), would subject it to "inconsistent regulation." Cf. *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 113 (1973) (property owner not required to obtain municipal license after obtaining required approval from Department of Public Utilities). We also reject GLSD's argument that allowing the town to impose antinuisance conditions would give the town authority to bypass the courts and administrative agencies. Nothing in this opinion gives the town more authority than it currently has to regulate nuisance conditions.

---

[9]Notably, the amicus brief filed by the department "suggests that the Final MOU conditions that regulate GLSD facilities' dust, noise and odor regulations are not preempted by [the department's] plenary authority over pollution discharges from sewage treatment plants generally and GLSD's facilities in particular." The department also noted that the "traffic and miscellaneous provisions do not raise environmental concerns within [the department's] usual jurisdiction." GLSD has not argued that the conditions are preempted by any State entity other than the department.

In its supplemental memorandum, and on appeal, the town argues that it has authority to impose antinuisance conditions under G. L. c. 111, § 31C, and G. L. c. 111, § 122.[10] The department, in its amicus brief, further suggests that a town has authority to impose limited antinuisance conditions under certain regulations promulgated by the department. However, it appears that the board developed the final MOU, which contains the conditions the town seeks to enforce, based on the board's contractual authority under the initial MOU, not under the statutory authority it now cites. Indeed, the town and GLSD agreed in the initial MOU to "attempt in good faith to develop a mutually agreeable and legally binding memorandum of understanding (the 'Final Memorandum of Understanding') that addresses the environmental, and public health and safety impacts" of the facilities. The initial MOU further provided that the "voluntary process set forth" in the document was to be "a harmonization of and elaboration upon, and not in addition to, any other process potentially applicable under state or local law." Thus, we are presented with unique procedural circumstances, caused in large part because the town did not pursue its regulatory authority under State or local law, but instead relied on the contractually established procedure to impose conditions on the facilities' operations. As a result, the record contains inadequate information to determine whether the conditions were a proper exercise of the town's authority under State or local law in these circumstances. Moreover, this particular issue was not considered by the judge, given his conclusion that GLSD was immune to local regulation. To the extent that the parties continue to dispute the town's power to impose the antinuisance conditions, this issue will need to be resolved on remand.

Because we conclude that the Superior Court judge erred in holding that GLSD is completely immune from local regulation,

[10]The town also argued that it had the authority to assign a site for the facility under G. L. c. 111, § 143, and that the authority to so assign encompassed the authority to impose conditions. However, as previously noted, note 6, *supra*, the town is no longer pressing this claim. Moreover, the judge correctly concluded that the doctrines of essential governmental functions and preemption prohibit the town from issuing site assignments for the contract I and II facilities. General Laws c. 111, § 143, does not provide a basis for the town's authority to impose conditions.

we need not address the town's argument that the injunction was overbroad.

B. *Building permit fee.* In holding that the board did not have authority to grant or deny a site assignment, the judge concluded that the building permit would have been valid without the conditions, but for the fact that it expired in December, 2000. The judge therefore ordered the building inspector to issue another building permit without any conditions, and ruled that further "issues regarding the building permits are moot." Based on the judge's erroneous conclusion that GLSD is immune from town regulation, GLSD argues that the town does not have authority to issue a building permit, and therefore must refund the permit fee.[11]

For the reasons stated above, the premise of GLSD's claim is erroneous. Moreover, implicit in the judge's ruling on the subject of the building permit is a conclusion that the GLSD facilities require a building permit. We agree. General Laws c. 143, § 3A, provides that "the local inspector shall enforce the state building code as to any building or structure within the city or town . . . including any building or structure owned by *any authority established by the legislature but not owned by the commonwealth*" (emphasis added). See 780 Code Mass. Regs. § 107.1 (1998). GLSD is an authority established by the Legislature and its facilities are not owned by the Commonwealth. There is nothing in GLSD's enabling statute or in the building code that suggests it is not subject to regulation by the local inspector. Moreover, obtaining a building permit does not interfere with GLSD's ability to fulfil its essential governmental function. Therefore, we conclude that GLSD is required to obtain a building permit, in compliance with the State building code, as enforced by the local inspector. GLSD's argument that *Perini Corp.* v. *Building Inspector of N. Andover,* 7 Mass. App. Ct. 72 (1979), suggests a contrary result is without merit. See *id.* at 74, 77 (expressly declining to "decide whether the State Building Code is applicable to" a GLSD facility or "whether a building permit is required").

GLSD, however, also argues that it is entitled to a refund of

---

[11]Because GLSD requested the refund in its complaint, we reject the town's argument that this issue was waived.

the building permit under the contractual terms of the initial MOU. Whether the town is obligated to refund the building permit fees under the initial MOU is a question of fact to be resolved on remand.

III. *Conclusion.*

In summary, we conclude that the doctrines of preemption and essential governmental functions do not prevent the town from imposing antinuisance conditions that (1) do not interfere with or burden GLSD's performance of its legislative mandated wastewater treatment function, and (2) do not conflict with the department's regulatory authority. Similarly, we conclude that the town has authority to issue building permits for the proposed facilities. However, factual questions, such as whether these particular conditions will interfere with GLSD's legislative mandate, and whether the town is contractually obligated to refund the building permit fees, cannot be decided on the present record. Accordingly, we vacate the judgment of the Superior Court and remand the case for further proceedings consistent with this opinion.

*So ordered.*