**David LIBBY, et al., Plaintiffs,**

**v.**

**Clifford H. MARSHALL, et al., Defendants.**

**Civ. A. No. 83–2281–S.**

United States District Court, D. Massachusetts.

Nov. 26, 1986.

Choate, Hall & Stewart, Boston, Mass., Pamela Wood, for plaintiffs.

Carl Valvo, Asst. Atty. Gen., Henry Cashman, Boston, Mass., for defendants.

A. Stanley Littlefield, Rockland, Mass., for John Cawley.

William J. Carr, Boston, Mass., for Alvin J. Yorra.

William F. Carr, Dedham, Mass., for Town of Braintree.

Herbert Hanson, Counsel Dept. of Correction, Boston, Mass., for Fair.

### MEMORANDUM AND ORDER ON STATE DEFENDANTS' MOTION TO DISMISS

SKINNER, District Judge.

*Introduction*

Plaintiffs brought this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that the conditions of their confinement in the Norfolk County Jail and House of Correction ("jail"), violated their constitutional rights. On January 17, 1984, I issued a Memorandum and Order in which I found that certain conditions at the jail did violate the plaintiffs' constitutional rights, and I granted a preliminary injunction requiring, *inter alia*, that the number of prisoners at the jail at any one time not exceed a Population Cap that now stands at 143. The number of prisoners at the jail exceeds the Population Cap.

On April 29, 1986, the plaintiffs amended their complaint to add several defendants: Governor Michael Dukakis, Secretary of Human Services Philip Johnston, Secretary of Administration and Finance Frank Keefe, Chairwoman of the Senate Ways and Means Committee Patricia McGovern, and Chairman of the House Ways and Means Committee Richard Voke. The substance of the amended complaint is that the unconstitutional conditions at the jail cannot be remedied without commonwealth funds. The executive department defendants are authorized by 1982 Mass.Acts chapter 347 and 1985 Mass.Acts chapter 799 to expend money to improve the commonwealth's correctional facilities, or to approve of expenditures or to request that bonds be issued for improvements at correctional facilities. McGovern and Voke chair legislative committees, the approval of which is necessary before funds can be expended to improve correctional facilities. Implicit in the complaint is the further allegation that these defendants' failure to expend money or request the issuance of bonds or approve the expenditure of money violates plaintiffs' constitutional rights. The amended complaint seeks an injunction requiring defendants to do those acts authorized by the abovementioned statutes.

The defendants named in the amended complaint have moved to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The defendants' Rule 12(b)(1) motion is predicated on the Eleventh Amendment. Defendants argue that the Eleventh Amendment bars a

federal court from granting the relief that plaintiffs seek. The Rule 12(b)(6) argument is simply that plaintiffs have failed to allege successfully that these defendants have violated plaintiffs' constitutional rights. Because defendants' Eleventh Amendment argument is jurisdictional, I shall address it first.

*Eleventh Amendment*

The Eleventh Amendment states that:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.

■ The Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan,* 415 U.S. 651, 662, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). However, since *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court has recognized an exception to the Eleventh Amendment prohibition on federal court jurisdiction. In *Young,* the Court held that where a state officer violates the federal Constitution, "he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States. *Young, supra,* at 160, 28 S.Ct. at 454. As the Supreme Court noted recently, the *Young* exception is "necessary to vindicate the federal interest in assuring the supremacy of [federal] law." *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985).

The *Young* exception to the Eleventh Amendment does not permit federal courts to grant whatever relief a plaintiff whose constitutional rights have been violated may seek. In *Edelman, supra,* the Court made clear that federal courts may grant prospective relief, but that retrospective relief is barred by the Eleventh Amendment. The Court approved of an injunction requiring the Illinois Department of Public Aid to process applications in a manner that did not violate the Constitution, but the Court reversed a lower court order which would have imposed an affirmative injunction on the defendants to make back payments to those applicants who had wrongly been denied benefits in the past. The Court stated that "[t]he funds to satisfy the award in this case must inevitably come from the general revenues of the State of Illinois, and thus the award resembles far more closely the monetary award against the State itself, ... than it does the prospective injunctive relief awarded in *Ex parte Young." Edelman, supra,* 415 U.S. at 665, 94 S.Ct. at 1356.

■ *Edelman* makes clear that the difference between what remedies federal courts may adopt and those they may not is not simply between an order that the state pay money and an injunction, because any prospective, mandatory injunction necessitates some expenditure of state funds. The *Edelman* Court noted that several decisions, including *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), had significant impact on state treasuries.

But the fiscal consequences to state treasuries in these cases were the necessary result of compliance with decrees which by their terms were prospective in nature. State officials, in order to shape their official conduct to the mandate of the court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young, supra.*

*Edelman, supra,* 415 U.S. at 667–68, 94 S.Ct. at 1357–58.

Later cases have made it even more clear that the relevant distinction for Eleventh Amendment purposes is that between a *damage* award and an *injunction,* not be-

tween one that would cost the state money and one that would not. In *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the district court had issued an injunction following a finding that conditions in the Arkansas penal system were unconstitutional. As the litigation progressed, the district judge found that the defendants had violated his orders. Because of the defendants' bad faith, the judge awarded attorney's fees to the plaintiffs. The Supreme Court affirmed the award, even though the award itself would not contribute directly towards improvement of conditions in the Arkansas prisons. The Court approved the award because the availability of such sanctions is a necessary element of the district courts' arsenal in attempting to enforce their prospective orders. Financial costs imposed which are "ancillary to the achievement of substantive remedial goals are not barred by the Eleventh Amendment." *Hutto, supra,* at 690, 98 S.Ct. at 2573. The "State and local authorities have primary responsibility for curing constitutional violations. 'If, however "[those] authorities fail in their affirmative obligations ... judicial authority may be invoked." *Swann [v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1], 15 [91 S.Ct. 1267, 1276, 28 L.Ed.2d 554.] Once invoked, "the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." ' " *Id.,* at 687 n. 9, 98 S.Ct. at 2572 n. 9.

Furthermore, " '[a]ncillary' costs may be very large indeed." *Id.* at 690 n. 15, 98 S.Ct. at 2573 n. 15 (referring to *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) ("*Milliken II* "). *Milliken II* makes clear that the Eleventh Amendment not only permits federal courts to order injunctive relief which may be quite costly to states, but that injunctive relief may be granted which requires no substantive actions by a state whatsoever, other than the payment of money, as long as the money payment required is necessary to the success of the prospective remedy ordered by the court. The Supreme

Court affirmed a lower court order which required that the State of Michigan contribute more than $5 million to help effectuate the substantive relief ordered by the court to desegregate the Detroit schools. The state had no substantive responsibilities; the desegregation plan was to be implemented by the Detroit school system. Nonetheless, the Supreme Court found that "[t]he decree to share the future costs of educational components in this case fits squarely within the prospective-compliance exception reaffirmed by *Edelman.*" *Id.,* at 289, 97 S.Ct. at 2761. Payments which are future-oriented are not just permitted, but often will be necessary in these types of cases. "[T]he decree must indeed be *remedial* in nature, that is, it must be designed as nearly as possible 'to restore the victims of discriminatory conduct to the position they would have occupied in the absence of such conduct.' " *Id.,* at 280, 97 S.Ct. at 2757 (citation omitted).

The cases cited in defendants' brief suggesting that plaintiffs' claims are barred even if based on federal law involved suits against the United States, and thus the Eleventh Amendment, and the *Young* exception to that amendment, are not applicable.

Defendants' reliance on *Pennhurst State School v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("*Pennhurst II* "), is also misplaced. *Pennhurst II* held that the Eleventh Amendment bars federal courts from awarding injunctive relief against states based on state law causes of action. Plaintiffs' cause of action here is clearly based on the federal constitution and § 1983. Therefore, *Pennhurst II* does not bar their claim against the state defendants.

The existence of some federal constitutional right is often predicated on a state law issue. "State law may bear upon a claim under the due process clause when the property interests protected by the Fourteenth Amendment are created by state law." *Davis v. Scherer,* 468 U.S. 183, 183, 104 S.Ct. 3012, 3019 n. 11, 82 L.Ed.2d 139 (1984) (citing *Board of Regents v.*

*Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). However, that a constitutional right is predicated on state law does not bring a claim within *Pennhurst II.*

In several recent cases, federal courts have held that *Pennhurst II* did not bar federal court jurisdiction of state defendants in suits to remedy conditions in county or city correctional facilities. *Tate v. Frey,* 735 F.2d 986 (6th Cir.1984); *Benjamin v. Malcolm,* 629 F.Supp. 713 (S.D.N.Y.1986); *Albro v. County of Onondaga, New York,* 627 F.Supp. 1280 (N.D.N.Y.1986). In all of these cases, plaintiffs filed suit against the local administrators of the jails in which they were incarcerated. The local defendants then filed third-party complaints against, or moved to join, state officials, arguing that under state law, these state officials bore some responsibility for conditions in the local jails. The state defendants argued that *Pennhurst II* barred jurisdiction over them. None of the courts agreed.

In all of the above cases, just as in this case, the district court had already found that conditions in the jail at issue violated plaintiffs' federal constitutional rights. The language in *Albro* is pertinent:

A *Pennhurst* problem does not appear to exist at this time because the remedial order is founded on a duty owed to the plaintiffs by defendants under the United States Constitution and not directly on state law. [Citations omitted.] While state law may impose a connection between the state and county defendants, state law nevertheless is not the basis for holding the state defendants potentially liable to the plaintiffs. Rather, *state law merely evidences that the state is in a position to affect the population levels at the [jail].*

*Albro, supra,* at 1289 n. 10 (emphasis added).

*Albro's* conclusion that state law merely provides the nexus between plaintiffs' claim and the state defendants was confirmed in *Benjamin.* "[T]he 'claim' to be examined, in this case in its present posture, is the City's assertion that the State defendants must be joined in order to assure full compliance with the existing decree which assures the plaintiffs' protection of their constitutional rights." *Benjamin, supra,* at 715.

In this case, plaintiffs assert that the state defendants must be added "in order to assure full compliance with the existing decree." Analytically, it makes no difference for Eleventh Amendment purposes that the procedure for joining the state defendants here was an amended complaint under Rule 15 rather than a third-party complaint under Rule 14 or a motion for joinder under Rule 19. Plaintiffs seek an injunction requiring state defendants to do certain acts which the defendants are authorized to do under state law in order to remedy violations of plaintiffs' federal constitutional rights. *Pennhurst II* does not apply to such a claim.

The plaintiffs claim, and this court has found, that conditions at the jail are unconstitutional. I have issued a prospective injunction requiring, *inter alia,* that the jail's population not exceed 143. Plaintiffs claim, and I have found, that certain maintenance and renovation are necessary to meet the Population Cap. The funds which the plaintiffs in this case seek from the state defendants are therefore ancillary, in the Supreme Court's use of that word, to a substantive prospective injunction. There is no doubt that an order by me to a proper party to spend money to pay for necessary maintenance and renovation, even if that money payment is the only order that I issue against that party, fits "squarely within the prospective-compliance exception reaffirmed by *Edelman.*" *Milliken II, supra,* 433 U.S. at 289, 97 S.Ct. at 2761. Defendants' motion to dismiss for lack of jurisdiction is therefore denied.

*Failure to State a Claim*

■ Defendants next argue that they are, in fact, not proper parties; that the amended complaint fails to allege that these defendants violated plaintiffs' constitutional rights in any way. The complaint alleges that "Defendants Dukakis, Johnston, Keefe, McGovern and Voke have not

authorized and approved the funds needed to alleviate the unconstitutional overcrowding of inmates at the Dedham Jail." Plaintiffs' argument is simple and straightforward. They claim that the state defendants hold the key to the state treasury, that no other keys exist, and that unconstitutional conditions at the jail will not be remedied until the treasury door is unlocked.

In somewhat more detail, plaintiffs allege that certain funds are now necessary "to bring the conditions at the Dedham Jail into constitutional compliance." Section 8 of 1985 Mass. Acts chapter 799 authorizes the Secretary of Human Services to expend money

> for the purpose of a grant program to assist counties in undertaking feasibility studies, acquiring land, including buildings thereon, making preliminary plans, and designing, constructing, expanding, reconstructing, rehabilitating, renovating, or finishing a jail, ...

> The secretary shall provide grant monies to the counties up to the limits established herein; provided, however, that no grant shall be made without the approval of the commissioner of administration and the house and senate committees on ways and means. The maximum amounts to be provided to counties under each program are as follows: ...

> five million dollars for feasibility studies and for designs of Norfolk and Essex county houses of correction;

> thirty million dollars for construction of Norfolk county house of correction; ...

> ten million dollars for the study, design, and construction of projects for deferred maintenance....

> \* \* \* \* \* \*

> Section 15. To meet the expenditures necessary in carrying out the provisions of section eight of this act, the state treasurer, upon the request of the governor, shall issue and sell bonds of the commonwealth in an amount to be specified by the governor....

1982 Mass.Acts chapter 347 contains similar provisions.

The amended complaint also charges that the state defendants have the authority to authorize and approve certain necessary funds which have already been appropriated under 1985 Mass.Acts chapter 140.

Plaintiffs allege that the state defendants have not done any of the acts which they are authorized to do under the acts of 1982 and 1985. The complaint also implicitly alleges that defendants' failure to do the named acts contributes to the ongoing deprivation of plaintiffs' constitutional rights.

I find that these allegations are sufficient to state a claim under § 1983. I base my denial of defendants' motion on two factors: the breadth and flexibility of the remedial powers of federal district courts to remedy demonstrated constitutional violations, and the potential vicarious liability of the commonwealth for the unconstitutional conditions at the jail.

*Remedial Powers of Federal Courts*

■ "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). There can be no doubt that plaintiffs have constitutional rights in the conditions of the confinement at the jail. My orders of January 14, 1984, and April 1, 1986, establish that plaintiffs' constitutional rights have been, and are being, violated. Plaintiffs allege that these constitutional violations cannot be cured without action from the state defendants. In a case involving constitutional violations, those parties whose actions are necessary to a solution become part of the problem if they do not take such actions. Since plaintiffs allege that state defendants have in this way become part of the problem, the state defendants are proper parties subject to my equitable authority in the search for solutions to the problems at the jail.

Plaintiffs' failure to allege that state defendants directly caused the original viola-

tion is not dispositive. Nor does it matter that some of the actions plaintiffs seek from state defendants are authorized, but not required, by state law. In *Washington v. Washington State Commercial Passenger Fishing Vessel Association*, 443 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979), the Supreme Court found that certain Indian tribes had treaty rights to fishing grounds in Washington state. The state itself had not in any way violated those rights, but modern commercial conditions were such that the tribes were being deprived of their share of fish under the treaty by the actions of commercial fishermen. The Supreme Court affirmed the tribe's rights in the fish. It then ordered the Washington Game and Fisheries Departments to promulgate regulations to protect the tribe's fishing rights. The Court issued the order even though there was no allegation that the state had acted affirmatively to deny the tribe's rights, or that the state had any duty under state law to issue the regulations. (In fact, the state argued initially that state law forbade the regulations required by the Court. *Id.*, at 672, 99 S.Ct. at 3067.)

The situation is no different in this case. Plaintiffs have certain constitutional rights and state action is necessary to vindicate those rights. A federal court has authority to order the state defendants to take the necessary action even though there is no allegation that the state defendants directly caused the constitutional violation in the first place.

■ The extraordinary powers available to a federal court sitting in equity are further demonstrated by *Griffin v. County School Board of Prince Edward County*, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). In *Griffin*, the Supreme Court was faced with the problem of desegregating the schools in Prince Edward County in the face of the county's decision to close the public schools to avoid desegregation. The Supreme Court authorized the district court to employ two relevant, and far reaching, remedies. "[T]he District Court may, if necessary to prevent further racial

discrimination, require the Supervisors to exercise the power that is theirs to levy taxes to raise funds adequate to reopen, operate, and maintain without racial discrimination a [constitutionally permissible school system]." *Id.*, at 233, 84 S.Ct. at 1234. In other words, the Supreme Court authorized the district court both to require a county to levy taxes and to open and maintain a school system. Even here, the Court was not yet finished. The final sentence of the Court's opinion was that *"if it becomes necessary to add new parties to accomplish this end* [of achieving a school system in conformity with the Constitution], *the District Court is free to do so." Id.*, at 234, 84 S.Ct. at 1234 (emphasis added). The focus of the Court in *Griffin* was clearly on determining what acts were necessary for plaintiffs' constitutional rights to be fulfilled. Where constitutional rights exist, and violations of those rights established, federal courts have broad authority to do whatever is necessary to remedy the violation.

■ *Washington v. Washington State* and *Griffin* demonstrate that what is important in determining if a party is subject to the remedial powers of a federal court is whether that party can be said to be responsible for a violation which has been shown to exist. However, proof of responsibility does not mean proof that the party caused the violation in the first place. It means only that the party controls the situation in such a way that actions by him are necessary to a solution. It is this distinction between causation and responsibility which distinguishes this case from *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), upon which defendants rely. The Supreme Court reversed in *Rizzo*, not because the mayor and police commissioner of Philadelphia did not cause the proven constitutional violations, but because the remedy ordered did not relate to the violations. The mayor and police commissioner were not responsible because nothing that they could have done would have served to prevent future constitution-

al violations of the kinds at issue in the case.

In *Dimarzo v. Cahill,* 575 F.2d 15 (1st Cir.), *cert. denied,* 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978), which was decided post-*Rizzo,* our court of appeals rejected an argument by the Massachusetts Commissioner of Corrections that he was not a proper defendant under *Rizzo* because he had not caused the constitutional violations. *Id.,* at 17–18. The court stated that "[W]e are not confronted with sporadic incidents, over which the Commissioner might properly claim to have no knowledge or control." *Id.,* at 17 (noting other post-*Rizzo* cases in which federal courts have found various state officials to be proper parties). While the *Dimarzo* court used the words "causal nexus," I do not read the *Dimarzo* opinion as requiring proof of the type of causation that state defendants demand here.

Plaintiffs here have demonstrated ongoing constitutional violations at the jail; they are entitled to prove that the state defendants are now responsible for those violations in that the violations cannot be remedied without action by the state defendants.

*Vicarious Liability*

■ In *Milliken II, supra,* the Supreme Court approved a district court order requiring the state of Michigan to contribute six million dollars to a desegregation plan for the Detroit school system. The plan was to be administered by the Detroit school board. The injunction was based on a finding of liability against the state which the Supreme Court approved in *Milliken v. Bradley,* 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974) (*"Milliken I"*). In *Milliken I,* the Court noted and approved of two bases on which state liability might be grounded. First, the district court found that an act of the state legislature was designed to "impede, delay and minimize racial integration. . . ." *Id.,* at 727, 94 S.Ct. at 3118. However, the Court also noted and approved of the district court finding "that the acts of the Detroit Board of Education, as a subordinate entity of the State, were attributable to the State of Michigan, thus creating a vicarious liability on the part of the State." *Id.* This finding was based on several factors, the most important being a Michigan court decision that school districts are state agencies. *Id.,* at 726–727, 94 S.Ct. at 3118.

*Milliken I* reached the Supreme Court after extensive factfinding by the district court. In order for plaintiffs' amended complaint to survive a motion to dismiss, I need only recognize that it is possible that plaintiffs could establish facts which would demonstrate that state defendants are vicariously liable for the conditions at the jail. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The Counties of the Commonwealth are creatures of statute, "organized by the General Court for the convenient administration of some parts of government." [Citations omitted.] As such, the scope of their authority is a "purely legislative" [citation omitted] determination, and counties possess only the rights and powers which the Legislature has conferred upon them "according to [its] judgment of the requirement of the interests of the public."

*County of Middlesex v. City of Newton,* 13 Mass.App. 538, 540, 434 N.E.2d 1297 (1982).

It is also significant that a county's authority to tax its several municipalities only exists by virtue of statute. *Id.* In other words, while the counties have the duty under Massachusetts law to provide county houses of correction, the counties can only afford to pay for the jails if the legislature grants them fiscal authority.

The statutes of 1982 and 1985, in authorizing state money for improvements in, or entirely new, jails in several counties, including Norfolk, are further evidence that the General Court has recognized its ultimate responsibility for funding the county jails. Legislative recognition of the necessity of state support for county jails is particularly evident in the emergency preamble to 1985 Mass.Acts chapter 799. That preamble states that the purpose of the act

is to facilitate the takeover by the commonwealth from the counties of the maintenance and operation of jails and houses of correction in the several counties of the commonwealth, and to provide for immediate relief to the counties and cities and towns by relieving them of the said costs, and to integrate and coordinate said facilities into a statewide modern correctional system, and to relieve the serious overcrowding problems in the correctional institutions of the commonwealth....

In *Inmates of Suffolk County Jail v. Eisenstadt*, 494 F.2d 1196 (1st Cir.1974), our court of appeals held that the state commissioner of corrections was a proper defendant in a suit to remedy conditions at the Suffolk County Jail. The court noted that "[t]he county jails and institutions are part of a statewide system of detention and corrections.... The jail cannot be viewed in splendid isolation from the rest of the Commonwealth." *Id.*, at 1199. *See also Dimarzo v. Cahill, supra.*

*County Commissioners of Bristol v. Conservation Commission of Dartmouth*, 380 Mass. 706, 405 N.E.2d 637 (1980) also suggests that the Commonwealth may be vicariously liable for Norfolk's administration of the jail. In *Bristol*, Bristol County planned to construct a new county jail in Dartmouth, on land zoned for limited industrial use. The Dartmouth Conservation Commission notified the county that the county must apply for a zoning variance.

Bristol then sought a declaratory injunction that no zoning variance was required. In Massachusetts, as is common elsewhere, the Commonwealth is "immune from municipal zoning regulations,...." *Id.*, at 708, 405 N.E.2d 637 (citation omitted). Bristol County claimed that it possessed the Commonwealth's immunity. The Supreme Judicial Court agreed, stating that

an entity or agency created by the Massachusetts Legislature is immune from municipal zoning regulations ... at least insofar as that entity or agency is performing an essential governmental function. [Footnote omitted.] It is clear that a county stands in the same position as the other legislatively created entities discussed above for the purposes of applying this rule.

*Id.*, at 709, 405 N.E.2d 1637.

As was noted in *Boston v. Chelsea*, 212 Mass. 127, 129, 98 N.E. 620 (1912), counties "may be changed at the will of the Legislature, and the character and extent of the sovereign powers to be exercised through them are subject to modification in like manner, according to legislative judgment of the requirement of the interests of the public."

Therefore, the authority exercised by counties is only that granted to them by the General Court. Furthermore, when counties exercise those powers granted them by the General Court, they stand in the place of the Commonwealth. Given these interpretations by the courts of Massachusetts, I am unwilling to find, at this preliminary stage, that there is no set of facts which plaintiffs could prove which would entitle them to relief against these state defendants.

*Decisions in Other Jurisdictions*

The discussion of other recent prison cases in the analysis of *Pennhurst II* is also relevant here. In all those cases, federal courts held that state officials were proper defendants in suits to remedy unconstitutional conditions at county jails. *See Tate, supra; Albro, supra; Benjamin, supra.* It is true that in those cases, the state officials sued had a clear duty under state law to remove certain prisoners from the county jails.[1] *See, e.g., Tate, su-*

---

1. In this case, the scope of state defendants' state law *duty* to perform those acts sought by plaintiffs is less clear. Those sections of 1982 Mass.Acts chapter 347 and 1985 Mass.Acts chapter 799 cited by plaintiffs were not appropriation bills. They simply authorized state defendants to do those acts sought by plaintiffs. Chap-

ter 140 of the Acts and Resolves of 1985 was an appropriation bill. Massachusetts law requires that executive officers expend money appropriated by the General Court, unless the legislative goals to be furthered by the appropriation can be met without expending the entire sum appropriated. *Opinion of the Justices to the Senate,*

*pra,* at 989. However, the reasoning behind the opinions suggests that the critical factor in the courts' reasoning was simply the necessity for state participation in any remedy. In *Benjamin,* the court stated that "the 'claim' to be examined, ... is the City's assertion that the State defendants must be joined in order to assure full compliance with the existing decree which assures the plaintiffs protection of their constitutional rights." *Benjamin, supra,* at 715. This is identical to plaintiffs' claim in this case regarding the presence of the state defendants.

> In *Albro,* the court stated that
>
> [t]he state's contributing to the overcrowding and hampering the county's ability to reduce the population at the [jail] makes the state properly a defendant in this action.... Accordingly, the state defendants are properly joined under Rule 19(a) to facilitate or at least not to impede the vindication of plaintiffs' constitutional rights.

*Albro, supra,* at 1289 and n. 10 (citation omitted).

Therefore, recent decisions in similar cases by other federal courts buttress the conclusion that a claim is stated against state defendants where a complaint alleges that without certain actions by state officials constitutional violations will not be remedied.

*Summary*

The conditions of plaintiffs' confinement at the jail violate plaintiffs' constitutional rights. Plaintiffs now allege that these violations cannot be remedied without certain actions by the state defendants named in the amended complaint. Defendants have moved to dismiss, arguing that the Eleventh Amendment bars federal court jurisdiction, and that the amended complaint fails to state a claim against the state defendants.

I reject defendants' claims. The amended complaint is not barred by the Eleventh Amendment. The claim is based on the federal constitution, not on state law, and the relief it seeks is ancillary to a prospective injunction already issued by me. The amended complaint does state a cause of action against the state defendants in that it alleges that the administrative structure of the jail system is such that the constitutional violations cannot be remedied without the relief that the plaintiffs seek from the state defendants. State defendants' motion to dismiss is therefore DENIED.

---

375 Mass. 827, 376 N.E.2d 1217 (1978). Therefore, executive officers do have a duty to expend appropriated money unless it would be wasteful to do so. However, on the record now before me, it remains unclear whether state defendants have a duty to expend money on those particular projects sought by plaintiffs.