**George Daniel REID, et al., Plaintiffs,**

**v.**

**JOHNSTON COUNTY, et al., Defendants.**

**No. 87-210-CRT.**

United States District Court, E.D. North Carolina, Raleigh Division.

June 23, 1988.

Michael S. Hamden, North Carolina Prisoner Legal Services, Raleigh, N.C., Leonard G. Green, East Center Community Legal Services, Smithfield, N.C., for plaintiffs.

John R. Corne, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., for defendants Kayye and Wilkerson.

William R. Britt, Smithfield, N.C., Howard E. Manning, Manning, Fulton & Skinner, Raleigh, N.C., for defendants Johnston County, Johnston County Bd. of Com'rs, Denning, Holding, Benton, Booker, Cash, Narrow, Beasley.

ORDER

TERRENCE WILLIAM BOYLE,
District Judge.

Plaintiff Reid filed this class action on March 19, 1987, alleging, *inter alia,* conditions in the Johnston County Jail violative of state law and the United States Constitution. Plaintiff seeks injunctive, declaratory and monetary relief. This court granted in part and denied in part plaintiff's request for a preliminary injunction. This court further certified the class pursuant to Fed.R.Civ.P. 23(c) but confined the class claims to injunctive relief only. Plaintiffs Minter, Eason and Griswold were allowed to intervene and maintain actions for damages. On the basis of the court's previous order, county defendants have taken steps to remedy conditions at the jail. State defendants now move for dismissal and summary judgment of the claims against them.

There are three state defendants: David T. Flaherty, Secretary of the North Carolina Department of Human Resources (DHR); Dr. Paul T. Kayye, Interim Secretary of the DHR from February 26, 1987 to April 8, 1987; and I.O. Wilkerson, Jr., Director of the Division of Facility Services in the DHR.

In this 42 U.S.C. § 1983 action, plaintiffs allege that Chapter 153A of the North Carolina General Statutes requires defendants to enforce certain minimum standards at county jails and that defendants' failure to do so is a proximate cause of unconstitutional conditions that exist at the jail. Defendants argue that no affirmative duty has been placed upon them by North Carolina law regarding minimum standards in county jails.

This court recognizes, as do the parties in their memoranda, that Eleventh Amendment jurisprudence prevents the federal courts from enforcing state-law claims against state defendants. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Nevertheless a § 1983 action is based upon action taken under "color of

any statute, ordinance, regulation, custom, or usage of any State...." In order to maintain a § 1983 action, there must be some deprivation of a constitutional or federal right that is *caused* by action taken under color of state law. It is this fine line between the enforcement of state law and actions taken under color of state law causing constitutional deprivations that the parties and this court now walk upon.

■ Defendants urge the court to recite that plaintiffs have abandoned their state law pendent claims. Plaintiffs claim that they have never asserted any pendent state law claims against the state defendants. The court finds that the only relevance of state law here is to determine whether action taken under color of state law has caused a constitutional deprivation. Specifically, plaintiffs argue, in opposition to the motion, that N.C.G.S. § 153A–221 requires DHR officials to publish minimum standards for local confinement facilities. Section 153A–222 requires that Department personnel visit and inspect each local confinement facility at least twice per year in order to determine whether compliance with the published minimum standards has been achieved. Finally, § 153A–223 provides for enforcement of the minimum standards:

> If an inspection conducted pursuant to G.S. 153A–222 discloses ... that a local confinement facility does not meet the minimum standards published pursuant to G.S. 153A–221 and, in addition, if the Secretary determines that conditions in the facility jeopardize the safe custody, safety, health, or welfare of persons confined in the facility, the Secretary *may* order corrective action or close the facility, as provided in this section.

(emphasis added). There is no question that the North Carolina legislature has contemplated some state participation in the maintenance and operation of local confinement facilities. It is also clear that the Secretary's affirmative duties under the statute are limited by the discretionary language in § 153A–223. The use of the word "may" is not accidental. It is consistent with the clearly defined statutory role of the Department of Human Resources and its Secretary.

The legislative policy behind the confinement facilities statute states:

> (3) The State *should* provide services to local governments to help improve the quality of administration and local confinement facilities. These services *should* include inspection, consultation, technical assistance, and other appropriate services.

N.C.G.S. § 153A–216 (emphasis added). This language is in clear contrast to subsection (4) of § 153A–216 which states that "[t]he State *shall* establish entry level employment standards for jailers...." (emphasis added). In summary, the state has mandatory duties and discretionary duties under the statute. The enforcement of minimum standards at local jails is a discretionary duty.

■ The statute makes clear that the primary responsibility for county confinement facilities rests upon the county itself. N.C.G.S. § 153A–218. As such, Johnston County and its officials, including the sheriff, have the primary responsibility for the maintenance and operation of the Johnston County Jail.

■ A similar factual situation was addressed in *Bush v. Viterna*, 795 F.2d 1203 (5th Cir.1986). In *Bush*, the Texas Commission on Jail Standards, a state agency, was given the responsibility to establish minimum standards for the "physical plant of county jails, for custodial care, and for staffing and services at those facilities." 795 F.2d at 1205 (citation omitted). Nevertheless, similar to the case at bar, the Commission had a completely discretionary responsibility to order the closing of a jail or to institute an action to prevent the violation of minimum standards. Judge Higginbotham discussed at great length the relationship between county and state officials in this context, concluding that factors necessary to maintain a § 1983 require close scrutiny lest confusion arise:

> It is immediately apparent that a theory of supervisory liability is infected with a risk of applying state law rather than simply using state law to identify the

persons responsible to an identified civil rights violation.

795 F.2d at 1209. This court will not apply state law. In using state law to identify persons responsible for civil rights violations, the court cannot conclude that the discretionary responsibilities set forth in the North Carolina General Statutes make the DHR the *cause*, as required by § 1983, of any violations.

Setting aside the discretionary language of the statute, plaintiffs' allegations that the DHR caused constitutional deprivations through a theory of supervisory liability is also without merit. The statutory scheme described above does not place the DHR in a supervisory role. The state is to "help improve the quality of administration and local confinement facilities." N.C.G.S. § 153A–216. The county is to "establish, acquire, erect, repair, maintain, and operate local confinement facilities." N.C.G.S. § 153A–218. To force the state to answer a § 1983 claim under these circumstances would be equivalent to subjecting it to vicarious liability for county violations. *Ortiz v. Turner,* 651 F.Supp. 309 (S.D.Ill.1987). Vicarious liability is not an available doctrine in § 1983 actions. *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir.1977).

The District Court opinion in *Libby v. Marshall,* 653 F.Supp. 359 (D.Mass.1986), is unpersuasive to the extent that it is relevant. The *Libby* court allowed a § 1983 claim to proceed based on statutory provisions that obligated the state Secretary of Human Services to provide funds for improvement of county correctional facilities. No such statute exists in North Carolina, nor would one be relevant in the present action. Furthermore, the *Libby* court based its ruling on the "potential vicarious liability of the commonwealth for the unconstitutional conditions at the jail." 653 F.Supp. at 364. As stated above, vicarious liability is not a doctrine associated with § 1983.

In summary, state defendants' motion to dismiss all claims against them is GRANTED because plaintiffs have not demonstrated that defendants' actions, taken under color of state law, have in any way *caused*

existing or past constitutionally deficient conditions at the Johnston County Jail.