**FLORIDA ASSOCIATION OF REHABILITATION FACILITIES, INC. et al., Plaintiffs,**

**v.**

**STATE OF FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION et al., Defendants.**

**No. 89–0984–CIV.**

United States District Court, S.D. Florida, Miami Division.

April 11, 1999.

---

Steven Murray Weinger, Kurzban Kurzban Weinger & Tetzeli, Miami, FL, for plaintiffs.

Chesterfield H. Smith, Jr., Morris Eugene Shelkofsky, Jr., Attorney General's Office Florida, Tallahassee, FL, for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

K. MICHAEL MOORE, District Judge.

Plaintiffs, Florida Association of Rehabilitation Facilities, Inc. and several operators of cluster facilities and intermediate care facilities for the developmentally disabled ("ICF/MR" or "ICF/DD") bring this action against Defendants, State of Florida Agency for Health Care Administration (including individuals in their official capacities) [1] seeking prospective injunctive and declaratory relief for alleged violations of federally protected rights under 42 U.S.C. § 1936a(a)(13)(A) (the "Boren Amendment").

THIS MATTER was tried before the Court without a jury on May 21, 22 and 29, 1998. Upon consideration of the entire record herein, including but not limited to the evidence adduced at trial, and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court enters the following findings of fact and conclusions of law.[2]

### FINDINGS OF FACT

1. Plaintiffs consist of an association representing the interests of persons with developmental disabilities and a group of non-profit and for-profit organizations providing developmental and health care services to developmentally disabled individuals.

2. Plaintiffs provide services in numerous ICF/DDs throughout the State of Florida.

---

1. Since the inception of this lawsuit, certain parts of the Florida Department of Health and Rehabilitative Services were separated into a new agency—the Agency for Health Care Administration ("AHCA"). Thereafter, the Department of Health and Rehabilitative Services changed its name to the Department of Children and Families ("DCAF"). For the sake of clarity, Defendants will be referred to as "HRS."

2. These Findings of Fact and Conclusions of Law are to be considered severally. Any finding of fact made which constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law made which constitutes a finding of fact is hereby adopted as a finding of fact.

A number of Plaintiffs operate and provide care in ICF/DD facilities located on land owned by the State. These facilities are referred to as "cluster" facilities.

3. Clusters are owned by the State of Florida but contracted to private providers that provide the services in their buildings. The care provided in the cluster facilities is the same as those provided in the private facilities.

4. The Medicaid program, established by Title IX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*, is a cooperative federal-state program to furnish people with public assistance who are unable to meet the cost of necessary medical services. Unlike major federal entitlement programs such as Social Security, Supplemental Security Income and Medicare, Medicaid is not a federally-administered program with a uniform set of statutorily defined benefits. Medicaid is a state-administered, federally-assisted program.

5. The costs of the optional services are shared between the Federal government, which contributes 56%, and the states, which contribute 44%. No state is obligated to participate in the Medicaid program. However, if a state opts to participate in the Medicaid program, it must do so in a manner that complies with federal statutory and regulatory requirements. 42 U.S.C. § 1396n.

6. Florida participates in the Medicaid program.

7. Within the general frame work of federal law, states that choose to participate in the Medicaid program (thus qualifying for federal financial participation in the medical assistance costs of eligible individuals) are granted broad latitude in defining the scope of covered services as well as many other key characteristics of their programs.

8. At the time this suit was filed in 1989, and until October 1, 1997, reimbursement pursuant to federally mandated State Medicaid Rate Plans ("Rate Plan") was governed by the Boren Amendment.

9. The Boren Amendment required that states pay ICF/DD providers rates that "are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and federal laws, regulations and quality and safety standards."

10. The Boren Amendment was repealed effective October 1, 1997.

11. The State of Florida has not implemented regulations or standards governing reimbursement of ICF/DDs. Until such time as the State amends its Rate Plan in accordance with federal requirements, the Rate Plan in effect on the effective date of repeal of the Boren Amendment continues to apply.

12. The majority of Plaintiffs and ICF/DDs in Florida generally operate at a loss because of inadequate reimbursement by the Defendants.

13. No financial incentive exists for a provider to spend more than the amount reimbursed. The excess funds expended by a provider due to inadequate reimbursement are never recovered.

14. Even with adequate reimbursement, the providers only receive payment of their actual costs, no profit or management fee is allowed as a reimbursable expense.

15. Further, because all the residents of ICF/DD facilities are Medicaid funded, unreimbursed costs cannot be offset by insured patients, private paying clients or Medicare.

16. Inadequate reimbursement detrimentally affects ICF/DDs and the quality of services received by the residents. ICF/DDs cannot fairly compete in the marketplace in terms of salaries. Thus, ICF/DDs lose valued and skilled employees who are able to obtain higher wages and salaries elsewhere. ICF/DD facilities, therefore, are forced to hire individuals who may be less experienced, but who will work for less than prevailing wages. This has had a direct and negative impact upon the level

and quality of care provided to Medicaid eligible clients treated by ICF/DDs.

17. Inadequate reimbursement of ICF/DD providers also has had a negative impact concerning the use of funds budgeted for improvements to meet operating costs of ICF/DDs, borrowing on physical plant equity to meet operating expenses, and the depreciation in the value of physical assets and plant to meet operating expenses so that providers are unable to replace or improve necessary equipment.

18. Furthermore, there is a shortage of new ICF/DD beds and there have been no applications to develop new ICF/DD beds in the past five years. There also is a waiting list of individuals requiring ICF/DD services.

19. The Rate Plan is based on a formula which reimburses ICF/DD providers based on their costs for the previous year—up to a target limit—plus an increase based on the expected rate of inflation for the following year.

20. The inflationary increase allowed is determined by the "Modified DRI Nationwide Nursing Home Cost Index." This formula sets rates for reimbursement for each ICF/DD provider in Florida when it is multiplied by some or all of the previous year's costs of that provider.

21. Plaintiffs have established that the DRI Index employed by the Defendants provides reimbursement rates based on an inflation rate lower than the actual rate of inflation in the State of Florida. This, logically, results in substantial under payment of the costs incurred by ICF/DDs. This under reimbursement leads directly to reductions in the level of care and services available to individuals who rely on Plaintiffs for their care and treatment.

22. There are four State-owned ICF/DD facilities in Florida. Defendants pay these facilities more than it does Plaintiffs.

23. Defendants have not analyzed the adequacy of ICF/DD rates to meet the reasonable and necessary costs of an efficiently operated provider. Defendants have failed to adequately investigate or determine whether the Rate Plan complies with federal requirements.

24. Defendants have admitted that the terms of the Rate Plan have caused providers to not be reimbursed for certain costs, even when the Defendants had no proof or no reason to believe that the provider was operating inefficiently or had incurred costs for items that were unreasonable or unnecessary.

25. The under reimbursement also has resulted in a low nurse-to-client ratio at a number of the ICF/DDs. The ICF/DD patients, by definition, generally have severe medical problems in addition to their developmental disabilities, and require on-site, twenty-four hour nursing staff. Plaintiffs have had difficulty hiring competent nurses because the Rate Plan fails to adequately account for the high rate of nursing salaries in Florida.

26. Prior to 1991, Defendants did not pay cluster facilities pursuant to the Rate Plan, but instead paid these providers on the basis of non-negotiable, fixed rate contracts that condition reimbursement on appropriations by the State Legislature. Pursuant to these contracts, Plaintiffs are not reimbursed for a substantial portion of their actual costs.

27. The cluster contracts expired at the end of their five-year term on July 1, 1996. Defendants have not rebid or renegotiated new cluster contracts.

28. On September 13, 1991, Judge Nesbitt of this Court entered a Preliminary Injunction (the "Preliminary Injunction") in favor of Plaintiffs on Counts I and III of their Complaint seeking, respectively, adequate and reasonable reimbursement under the Rate Plan in compliance with the Medicaid Act, and seeking payment pursuant to the same Rate Plan, on the same basis as ICF/DDs, to cluster providers.

29. The Court adopts the findings and conclusions of Judge Nesbitt in the Preliminary Injunction.

30. The Preliminary Injunction entered by Judge Nesbitt enjoined the Defendants

from "inadequately reimbursing providers of care in the ICF/MR program ..." The Preliminary Injunction further enjoined Defendants from "paying providers for services at ICF/MR cluster facilities in a manner other than as provided for in a Rate Plan," and commanded Defendants to "commence paying to each provider of ICF/MR services at cluster facilities the full Medicaid Rate for that facility, and to [afford] each provider at cluster facilities all rights and protections accompanying a Rate Plan governing ICF/MR facilities."

31. Pursuant to the Preliminary Injunction, the Court retained jurisdiction to make modifications to the Rate Plan and provided that rates of reimbursement established under a Court approved plan "shall be retroactive to September 4, 1991."

### CONCLUSIONS OF LAW

32. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983. Plaintiffs, as health care providers under the Florida Medicaid Program, have standing to sue the Defendants for declaratory and injunctive relief under 42 U.S.C. § 1983 for Defendants' alleged violation of the Boren Amendment of the federal Medicaid Act. *Tallahassee Memorial v. Cook*, 109 F.3d 693 (11th Cir. 1997).

33. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

34. Defendants and the State of Florida participate in the Medicaid Program. While Defendants' participation is voluntary, because the State has chosen to participate and receive matching funds from the federal government, it is obligated to comply with the requirements of the Medicaid Act and corresponding regulations. *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455; *Tallahassee Memorial Hospital v. Cook*, 109 F.3d 693 (11th Cir.1997).

35. To qualify for federal assistance under the Medicaid Act, each participating state must submit and have approved by the Secretary of Health and Human Services a "plan for medical assistance." 42 U.S.C. § 1396a(a). A plan for medical assistance must contain a comprehensive statement describing the nature and scope of the state's Medicaid program. 42 CFR § 430.10 (1989).

36. The Supreme Court has held that the Medicaid Act creates a substantive right, enforceable by health care providers, to reimbursement at rates that are actually reasonable and adequate to meet the costs of efficiently and economically operated facilities providing care to Medicaid patients. *See Wilder.*

37. Plaintiffs in this case have filed suit for reimbursement and rates which are reasonable and adequate to meet the costs that they must incur as efficient and economic ICF/DD providers, and which allow them to provide care and treatment in compliance with relevant state and federal laws and regulations. Moreover, Plaintiffs who operate cluster facilities seek reimbursement in conformance with Section 1396a(a)(13)(A), i.e., at rates reasonable and adequate to meet their costs as efficient and economically operated providers who must comply with state and federal laws and regulations.

38. At all relevant times up to October 1, 1997, the Medicaid Act provided: "A state plan for medical assistance must—provide ... for payment ... of the hospital services, nursing facility service, services, and services in an *intermediate care facility for the mentally retarded* provided under the plan to the use of rates ... *which the state finds and makes assurance satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities* in order to provide care and services in conformity with applicable state and federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access to ... to inpatient hospital services of adequate quality." 42 U.S.C. § 1396a(a)(13)(A) (emphasis added).

39. The Boren Amendment was in effect in 1989 when this lawsuit was filed, and was in effect through October 1, 1997.

40. The Boren Amendment has been repealed effective October, 1997. The standards governing reimbursement set forth in the Boren Amendment continue to apply to this case as the State of Florida has not yet promulgated any rules or regulations, or enacted any legislation, replacing the Boren Amendment and continues to reimburse ICF/DD providers under the Rate Plan.

41. The Rate Plan in force in the State of Florida setting forth the terms, conditions and methodology for reimbursement of the costs incurred by ICF/DD providers is inadequate and is inherently flawed.

42. The Court finds that absent injunctive relief, Plaintiff ICF/DD providers will be irreparably harmed by the Defendants' continued refusal to reimburse them for their costs at a reasonable rate.

43. The same is true of Plaintiffs who provide ICF/DD services at cluster facilities. The fixed rate contracts under which these Plaintiffs operate do not allow for interim rate increases or any administrative review as to the amount of reimbursement. Plaintiffs who operate cluster facilities have therefore been forced to use funds and resources intended for other long-term needs and improvements to provide adequate care for developmentally disabled patients. The Court finds the cluster providers are also being irreparably harmed by the Defendants' conduct and omissions.

44. While, as Defendants contend, the Boren Amendment was intended to grant states a greater degree of flexibility "in establishing the methodology for their reimbursement rates, the amendment was 'not intended to encourage arbitrary reductions in payment that would adversely affect the quality of care.'" *Tallahassee Memorial,* 109 F.3d at 704, citing S.Rep. No. 139, 97th Cong., 1st Sess. 478, *reprinted in* 1981 U.S.Code & Cong. & Admin. News 396, 744.

45. In *Tallahassee Memorial v. Cook,* the Eleventh Circuit found the Florida Agency for Health Care Administration had violated the Boren Amendment as the Rate Plan denied health care providers payment for in-patient psychiatric services for adolescents once those services were no longer medically necessary, even though the plaintiff providers were required to continue to provide care for these individuals.

46. The Eleventh Circuit found the defendants, by denying reimbursement to the plaintiffs, impermissibly shifted "the deficiencies of the state's medical assistance program, and the resulting fiscal impact of the same, to the plaintiff hospitals." *Tallahassee Memorial, supra* at 704. The Eleventh Circuit ordered the defendants, through the Florida Legislature, to amend the Rate Plan "in such a way as to be nonviolative of the Boren Amendment" by including the necessary provisions for reimbursement.

47. The Defendants in this case also have impermissibly shifted the deficiencies and the resulting fiscal impact of the deficient Rate Plan to Plaintiffs. Defendants complain they are constrained by the Legislature's failure to appropriate the funds necessary to adequately reimburse Plaintiffs. However, such budgetary constraints are not a valid basis for a state's failure to comply with the Medicaid Act. *See Alabama Nursing Home Ass'n v. Harris,* 617 F.2d 388, 396 (5th Cir.1980) (noting that "inadequate state appropriations do not excuse non-compliance" with the requirements of the Medicaid Act).

48. Pursuant to the Boren Amendment, while states are not required to reimburse all allowable costs of efficiently and economically operated providers, they must set prospective reimbursement rates that are "reasonable and adequate" to meet the costs incurred by economically and efficiently operated facilities. Each participating state must find that rates are reasonable and adequate and the Rate Plan formulated and implemented by each

participating state must adopt rates which are *actually* reasonable and adequate. *See Abbeville General Hospital v. Ramsey*, 3 F.3d 797 (5th Cir.1993) *cert. denied*, 511 U.S. 1032, 114 S.Ct. 1542, 128 L.Ed.2d 194 (1994).

■ 49. The findings requirement imposed by the Boren Amendment for determining the Medicaid provider reimbursement rate requires the Defendants in this case to show that they conducted an objective analysis, evaluation, or other fact-finding process to determine the effects of the rates set by the Rate Plan on the level of care Medicaid patients receive. *See Abbeville.*

50. Defendants in this case have expressly admitted a lack of knowledge and lack of any adequate investigation as to what a reasonable and adequate rate is to compensate an efficiently and economically operated provider. In *Abbeville,* the Fifth Circuit found a similar failure to engage in an adequate findings process by the State of Louisiana constituted a violation of the Boren Amendment. Because the State "gathered no information and conducted no empirical analysis to ascertain whether the target rate 'reasonably and adequately' compensated efficient and economical hospital servicing a disproportionate number of low income patients, ... other than obtaining cost reports from providers." *Abbeville, supra* at 806.

51. "Federal law is not satisfied if the state merely makes conceptual policy decisions. A policy predicated upon provincialism and self-interest, not upon findings of reasonableness and adequacy, is unacceptable." *Id.* (citing *West Virginia University Hospitals, Inc. v. Casey*, 885 F.2d 11, 30 (3d Cir.1989)).

52. As with Defendants in this case, the defendants in *Abbeville* argued they engaged in "ongoing analysis of adequacies of the rates," reviewed audited cost reports available from the latest time period, and reviewed data available from the Department of Labor and Statistics and other publications referring to "general economic conditions." *Id.*

53. The Court in *Abbeville* found this was inadequate pursuant to the Boren Amendment. "[Defendant] has reduced its findings process to a simple exercise of compilation and assumption, completely ignoring the Congressional mandate that state agencies consider relevant factors such as efficiency, economy, quality of care and reasonable access." *Id.* At 808. The same is true in the instant case. *See also Oklahoma Nursing Home Ass'n v. Demps*, 816 F.Supp. 688 (W.D.Okl.1992), *appeal dismissed*, 9 F.3d 117 (10th Cir.1993) *vacated pursuant to settlement*, 1994 WL 740024 (state failed to make findings and assurances that established any nexus between state's Medicaid reimbursement rates and costs of operating efficient and economical facility providing requisite level of care).

54. The Court also finds that the Rate Plan formulated and implemented by Defendants fails to substantively comply with the Boren Amendment. Defendants have failed to convincingly rebut or refute evidence introduced by the Plaintiffs establishing that while they operate efficiently and economically, and indeed are required to establish this by submitting cost reports to the State, they are not reimbursed in a manner that is "reasonable and adequate" to allow them to provide care to Florida's developmentally disabled population in compliance with federal laws and regulations. Plaintiffs testified to numerous consequences resulting from under reimbursement, including the inability to hire competent staff, inability to upgrade and maintain physical, and the incurring of debt or using funds earmarked for other purposes for covering losses caused by the under reimbursement.

■ 55. Furthermore, the Defendants have also violated the Medicaid Act because of their failure and refusal to reimburse cluster providers pursuant to the Rate Plan. The Medicaid Act provides that the federally required State Plan must provide for payment of ICF/MR medical services "through the use of rates" set forth in the Plan. 42 U.S.C.

§ 1396a(a)(13)(A). Neither the regulations nor the Medicaid Act contains any limitation pursuant to a Rate Plan based on ownership of ICF/DD facilities. Thus, cluster facilities are entitled to sufficient reimbursement. Defendants' continued refusal to pay cluster facilities pursuant to the Rate Plan, therefore, violates the Boren Amendment.

56. This Court is not persuaded by the Defendants' explanation for their use of fixed contracts rather than the Rate Plan—that because the State maintains the provider number, Defendants are the actual providers of services and Plaintiff cluster providers are merely independent contractors who voluntarily enter into the contracts. With respect to this argument, this Court adopts the findings of Judge Nesbitt as set forth in the Preliminary Injunction:

The first prong of this argument is false to the point of absurdity, and the second evinces a disturbing and fundamental misunderstanding of the goals of the Medicaid Act. It cannot seriously be disputed that the Medicaid Act requires HRS to pay all service providers pursuant to a Plan, whether they own the facilities or not, and regardless of whether they can be classified as an "independent contractor" under other circumstances. Defendants' contention both ignores reality and would allow any state to evade entirely its requirements under the Act. Moreover, the very purpose of the Plan requirement is to eliminate the perceived detrimental effects on health care caused by fixed-rate systems such as the one used by Defendants here. See *Illinois Council for Long Term Care v. Miller*, 503 F.Supp. 1091 (N.D.Ill.1980) (noting Congress' displeasure with flat-rate system because of its failure to result in efficient, quality care).

---

**3.** The Court also reaffirms the Order on Motion for Civil Contempt which incorporates the agreement of the parties to pay cluster providers the full ICF/DD Medicaid rate for five periods of five years each. We are cur-

57. Defendants have not advanced any meritorious defense or justification for their failure to reimburse cluster providers pursuant to the Rate Plan and their failure to do so is illegal.[3]

58. Defendants' claim that Plaintiffs' claims and the relief sought are barred by the Eleventh Amendment also must fail. Plaintiffs are not barred by the Eleventh Amendment from seeking enforcement, in a federal court, of a federal statute which State agents have violated. *Ex Parte Young*, 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

59. Furthermore, because compliance by the Defendants with the Preliminary Injunction entered by this Court required expenditure of State funds, such expenditures are ancillary to preliminary injunctive relief entered. As such, contrary to Defendants' position, this compliance and this relief is not precluded by the Eleventh Amendment. *See, e.g., Bennett v. White*, 865 F.2d 1395 (3d Cir.1989); *Libby v. Marshall*, 653 F.Supp. 359 (D.Mass.1986) (finding the Eleventh Amendment did not prohibit district court from exercising its jurisdiction to entertain action against state officials seeking injunctive relief concerning overcrowding of inmates at a jail because the district court had previously found conditions at the jail unconstitutional and issued a prospective injunction requiring the jail's population not to exceed a population cap; funds sought were ancillary to the injunctive relief sought).

60. In this case, the Court has, since September 13, 1991, enjoined Defendants from reimbursement at inadequate rates and reimbursing cluster providers "in a manner other than as provided in a Rate Plan" at the "full Medicaid rate." Defendants' conduct, therefore, constitutes a continuing violation of the Medicaid Act and Plaintiffs' statutory rights. Further,

rently in the middle of the second five year term and thus obligations on the Defendants shall continue regardless of the outcome of this case.

the portion of Plaintiffs' claim relating to inadequate reimbursement occurring since the Preliminary Injunction represents injuries arising after Defendants were ordered to comply with the Medicaid Act and are therefore prospective in nature. *See Rye Psychiatric Hospital Center v. Surles*, 777 F.Supp. 1142 (S.D.N.Y.1991).

61. In sum, Plaintiffs in this case have suffered and will suffer irreparable harm absent entry of permanent injunctive relief by this Court. Plaintiffs continue to lose substantial sums of money due to the deficiencies in the Rate Plan caused by Defendants' failure to comply with the Medicaid Act. Further, Plaintiffs have no adequate remedy at law as they are precluded from recovering damages by the Eleventh Amendment. *Ex Parte Young, supra.*

62. The injury to the Plaintiffs, furthermore, far outweighs any possible injury to the Defendants. Plaintiffs, absent injunctive relief, will continue to incur significant financial losses, will be unable to adequately treat their patients in accordance with federal law and regulations, and will continue to be exposed to consequences directly flowing from under reimbursement from the Defendants.

63. Conversely, the burden on Defendants caused by permanent injunctive relief will result in forcing Defendants to comply with the law. Defendants have chosen to participate in the federal Medicaid program and to receive federal funds, and cannot in good faith complain that paying higher rates is itself a burden as the State is required by the Medicaid Act to reimburse providers adequately and reasonably. *See Illinois Hospital Ass'n v. Illinois Dept. of Public Aid*, 576 F.Supp. 360 (N.D.Ill.1983).

64. Moreover, the public has a vital interest in the continuing availability of Medicaid services and Defendants' compliance with the Medicaid Act by adequately and reasonably compensating efficiently and economically operated providers. *See, e.g., Illinois Hospital Association, supra; Alabama Home Health Care, Inc. v. Schweiker*, 527 F.Supp. 849 (N.D.Ala.1981) (finding that injunctive relief was warranted and the public would not be disserved by granting of preliminary injunction as the public has a vital interest in the survival of non-profit home health care agencies).

## CONCLUSION

Accordingly, it is hereby, **ORDERED AND ADJUDGED** as follows:

1. The Court finds that Plaintiffs have established that the ICF/DD Rate Plan fails to adequately compensate Plaintiffs as it is not "reasonable and adequate to meet the costs ... of efficiently and economically operated facilities," in violation of the Boren Amendment and 42 U.S.C. § 1983.

2. Based upon the foregoing, Plaintiffs are entitled to a Declaratory Judgment holding the Rate Plan to be deficient as it fails to reimburse Plaintiffs at a rate in compliance with the Boren Amendment and the following changes are ordered to the Reimbursement Plan retroactive to September 4, 1991 (the date established in the Preliminary Injunction):

   a. The prospective inflation index shall be the same as the historical (target) rate which Defendants themselves selected, i.e., DRI times 1.786;

   b. Three year averaging of cost reports shall be used to calculate rate reductions based on decreases in costs;

   c. The cap on rates for new facilities of six beds or less shall be deleted;

   d. Settlement of budgeted rates for new providers shall use an average of the relevant rate periods;

   e. For providers at small facilities, rates shall be set based on an average (or collectively) for all six bed ICF/DDs operated by that provider;

   f. The Defendants shall develop a definable standard for an efficiently operated provider;

   g. Increased costs related to increased needs of a client due to changed medical, behavioral or therapeutic

needs shall be a basis for an interim rate request;

h. Cost allocations between levels of care shall be revised (except where such a revision would reduce reimbursement already paid to a provider);

i. The Defendants shall rebase whenever actual costs exceed actual expenditures for 50% or more of providers in any rate period as shown on KM Schedules of cost reports maintained by Defendants.

3. The Defendants shall comply with its published Rate Plan including the immediate rebasing for the 1995 rate setting period where it failed to rebase.

4. Defendants are enjoined from violation of the Boren Amendment from September 13, 1991 until the State adopts regulations, procedures and standards governing the reimbursement of ICF/DD providers in place of the standards set forth in the Boren Amendment. Defendants shall amend the Rate Plan accordingly.

5. This Court retains jurisdiction to enforce this Order and to assess and award attorneys fees and costs.

6. All pending motions not otherwise ruled upon are DENIED AS MOOT.

7. The Court will issue a separate final judgment in accordance with this Order.

DONE AND ORDERED.